THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CINEMARK HOLDINGS, INC.;<br>CINEMARK USA, INC.; CNMK TEXAS<br>PROPERTIES, LLC; CENTURY<br>THEATERS, INC.; CINEMARK<br>PARTNERS II, LTD.; GREELEY, LTD.;<br>and LAREDO THEATRE, LTD. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | § | CIV. A. NO. 4:21-CV-00011-ALM |
| | § | |
| v. | §<br>§ | |
| FACTORY MUTUAL INSURANCE<br>COMPANY, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

**DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Thomas H. Cook, Jr.
Texas Bar No. 00783869
tcook@zelle.com
Shannon M. O'Malley
Texas Bar No. 24037200
somalley@zelle.com
Michael P. O'Brien
Texas Bar No. 24103418
mobrien@zelle.com

ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX 75202-3975
Telephone:214-742-3000
Facsimile: 214-760-8994

*-and-*

Emileigh S. Hubbard
Texas Bar No. 24076717
ehubbard@hoaf.com

**HENRY ODDO AUSTIN & FLETCHER, P.C.**
1700 Pacific Ave., Suite 2700
Dallas, TX 75201
Telephone:            214-658-1900
Facsimile: 214-658-1919

**ATTORNEYS       FOR       DEFENDANT FACTORY     MUTUAL     INSURANCE COMPANY**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS ................................................................... 2

III.  RELEVANT TERMS AND CONDITIONS OF THE POLICY ................... 5

   **A.** General Framework of the Policy ................................................................ 5

   **B.** Physical Loss or Damage Required ............................................................ 7

   **C.** Applicable Exclusions: The Contamination Exclusion and the Loss of Use Exclusion..... 8

      **i.** The Contamination Exclusion ..................................................... 8

      **ii.** The Loss of Use Exclusion........................................................... 9

   **D.** The Policy's Communicable Disease Coverages Are Narrow Exceptions to the Contamination and Loss of Use Exclusions. ........................................... 9

IV.   LEGAL STANDARD ................................................................................. 11

   **A.** Motion for Judgment on the Pleadings Standard .................................... 11

   **B.** Insurance Contract Interpretation Standard ........................................... 12

V.    ARGUMENT............................................................................................... 13

   **A.** Cinemark Cannot Succeed on Its Breach-of-Contract Claim ................. 13

      **i.** Cinemark Has Not Plausibly Alleged "Physical Loss or Damage" to Its Properties Because Neither COVID-19 Nor the Related Governmental Orders Are "Physical Loss or Damage." ........................................................................ 13

      **ii.** The Contamination Exclusion Bars Coverage .......................... 19

      **iii.** The Loss of Use Exclusion Bars Coverage. ............................. 23

   **B.** FM Global has not breached the contract under the Communicable Disease coverages. . 24

   **C.** Cinemark's Request for Declaratory Judgment Should Be Dismissed as Redundant of Its Breach-of-Contract Claim.................................................. 24

   **D.** FM Global is not liable on Cinemark's various extra-contractual causes of action because FM Global is not liable to Cinemark for breach of contract and because FM Global had a reasonable basis for its actions.................................................................... 25

VI.   CONCLUSION ........................................................................................... 28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alhamzawi v. GEICO Casualty Co*.,
   216 F. Supp. 3d 764 (N.D. Tex. 2016) ...................................................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)......................................11, 17

*Burnette v. Wells Fargo Bank, N.A*.,
   No. 4:09-CV-370, 2011 WL 676955 (E.D. Tex. Jan. 27, 2011) (Mazzant, J.)......................25

*Certain Underwriters at Lloyd's, London v. Prime Natural Resources, Inc*.,
   No. 01-17-00881-CV, 2019 WL 7044667 (Tex. App.—Houston [1st Dist.]
   Nov. 26, 2019, no pet) ...............................................................................27

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*,
   No. 220CV01240JADNJK, 2021 WL 769660 (D. Nev. Feb. 26, 2021) ...........................16, 17

*In re Deepwater Horizon*,
   470 S.W.3d 452 (Tex. 2015).........................................................................12

*Diesel Barbershop, LLC v. State Farm Lloyds*,
   479 F. Supp. 3d 353 (W.D. Tex. Aug. 13, 2020)............................................13, 14, 17, 20, 21

*Domain Protection, LLC v. Sea Wasp, LLC*,
   No. 4:18-CV-792, 2019 WL 6255733 (E.D. Tex. Nov. 22, 2019)........................................24

*Forbau v. Aetna Life Insurance Co*.,
   876 S.W.2d 132 (Tex. 1994).........................................................................12

*Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*,
   327 S.W.3d 118 (Tex. 2010)....................................................................12, 13, 22

*Hajer v. Ohio Sec. Ins. Co.*,
   No. 6:20-CV-00283, 2020 WL 7211636 (E.D. Tex. Dec. 7, 2020) ...11, 13, 14, 15, 16, 17, 19,
   20

*Hartford Insurance Company of Midwest v. Mississippi Valley Gas Co*.,
   181 Fed. App'x 465 (5th Cir. 2006) ...........................................................14, 18

*Harvest Moon Distributors, LLC v. Southern-Owners Insurance Co*.,
   No. 620CV1026ORL40DCI, 2020 WL 6018918 (M.D. Fla. Oct. 9, 2020)..........................23

*Independence Barbershop, LLC v. Twin City Fire Insurance Co*.,
   A-20-CV-00555-JRN, 2020 WL 6572428 (W.D. Tex. Nov. 4, 2020)....................................22

iv

*JAW The Pointe, LLC, v. Lexington Insurance C*o.,
  460 S.W.3d 597 (Tex. 2015)...................................................................12

*In re Katrina Canal Breaches Litig*.,
  495 F.3d 191 (5th Cir. 2007) ...............................................................11

*Lane v. Halliburton*,
  529 F.3d 548 (5th Cir. 2008) ...........................................................3, 11

*Little v. KPMG LLP*,
  575 F.3d 533 (5th Cir. 2009) ...............................................................18

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Company of
  Connecticut*,
  No. 2:20-CV-04423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ...........................16

*Out West Restaurant Group Inc. v. Affiliated FM Insurance Co*.,
  No. 20-CV-06786-TSH, 2021 WL 1056627 (N.D. Cal. Mar. 19, 2021)................................28

*Potomac Insurance Co. of Illinois v. Jayhawk Medical Acceptance Corp.*,
  198 F.3d 548 (5th Cir. 2000) ...............................................................12

*Promotional Headwear Int'l v. Cincinnati Insurance Co*.,
  No. 20-CV-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020)...............................17

*Quibodeaux v. Nautilus Insurance Co*.,
  655 Fed. App'x 984 (5th Cir. 2016) .........................................................26

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) .......................................................18

*RSUI Indemnity Co. v. The Lynd Co*.,
  466 S.W.3d 113 (Tex. 2015)..................................................................12

*Salon XL Color & Design Grp., LLC v. W. Bend Mutual Insurance Co.*,
  2021 WL 391418 (E.D. Mich. Feb. 4, 2021)................................................22, 23

*Selane Products, Inc. v. Continental Casualty Co.*,
  No. 220CV07834MCSAFM, 2020 WL 7253378 (C.D. Cal. Nov. 24, 2020) ........................23

*Selery Fulfillment, Inc. v. Colony Insurance Co.*,
  No. 4:20-CV-853, 2021 WL 963742 (E.D. Tex. Mar. 15, 2021) ..................13, 14, 15, 18, 28

*Social Life Magazine, Inc. v. Sentinel Insurance Company Ltd.*,
  No. 20 C 3311 (S.D.N.Y. 2020), ECF No. 25 .................................................15

*State Farm Fire & Casualty Co. v. Simmons*,
  963 S.W.2d 42 (Tex. 1998)...................................................................26

*State Farm Lloyds, Inc. v. Polasek,*
   847 S.W.2d 279 (Tex. App.—San Antonio 1992, writ denied)..............................27

*State Farm Lloyds v. Page,*
   315 S.W.3d 525 (Tex. 2010)..............................................................................12

*Tanner v. Nationwide Mutual Fire Ins. Co.,*
   289 S.W.3d 828 (Tex. 2009)..............................................................................12

*Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.,*
   No. 1:20-CV-665-RP, 2021 WL 972878 (W.D. Tex. Jan. 21, 2021)..13, 14, 15, 16, 17, 18, 26

*USAA Texas Lloyds Co. v. Menchaca,*
   545 S.W.3d 479 (Tex. 2018)..............................................................................26

*Vizza Wash, LP v. Nationwide Mutual Insurance Co.,*
   No. 5:20- CV-00680, 2020 WL 6578417 (W.D. Tex. Oct. 26, 2020)..................13, 20, 21, 26

*Whiskey River on Vintage, Inc. v. Illinois Casualty Co.,*
   No. 4:20-CV-185-JAJ, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020) ...............................23

*Wolford v. American Home Assurance Co.,*
   263 S.W.3d 12 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ...........................27

*Ybarra Investments Inc. v. Scottsdale Insurance Co.,*
   No. 2020-25079 (333rd Dist. Ct., Harris County, Tex. Dec. 10, 2020) ................................14

*Zhu v. First Community Insurance Co.,*
   543 S.W.3d 428 (Tex. App.—Houston [14th Dist.] 2018, pet. filed)....................................26

## Other Authorities

10A *Couch on Ins.* § 148:46 (3d ed. 2005)...................................................................14

Fed. R. Civ. P. 8........................................................................................................18

Federal Rule of Civil Procedure 12(c) ...................................................................1, 28

Federal Rule of Civil Procedure 26 .......................................................................11, 18

<u>**DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S**</u>
<u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Defendant Factory Mutual Insurance Company ("FM Global" or "Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings with respect to the Second Amended Complaint ("Amended Complaint") of Plaintiffs Cinemark Holdings, Inc., Cinemark USA, Inc., CNMK Texas Properties, LC, Century Theaters, Inc., Cinemark Partners II, Ltd., Greeley, Ltd. and Laredo Theatre, Ltd. ("Cinemark" or "Plaintiffs").

## I.      **INTRODUCTION**

Cinemark, which describes itself as "a leader in the motion picture exhibit industry . . . with approximately 332 theatres and 4,522 screens in 42 states" brought this suit against its property insurer, FM Global, seeking policy benefits due to alleged losses from COVID-19, the disease caused by the novel coronavirus.[1]

Cinemark alleges that the COVID-19 pandemic and resulting governmental orders constitute "physical loss or damage" under its property insurance policy. But COVID-19 does not constitute "physical loss or damage" to property as a matter of law, as confirmed by the holdings of every federal court in Texas, at least one Texas state court, and the vast majority of courts throughout the country to have considered the issue. Therefore, Cinemark is not entitled to coverage under any policy provisions that require "physical loss or damage" as a threshold showing for coverage, which include the "all-risks coverage," Time Element, Contingent Time Element, Protection and Preservation of Property, Attraction Property, Civil or Military Authority, Logistics Extra Cost and Ingress/Egress provisions.

---

[1] COVID-19 is the disease caused by the virus SARS-CoV-2, also sometimes referred to as the "novel coronavirus." For purposes of simplicity, except where specifically stated otherwise, this Motion will use "COVID-19" to encompass all of these terms, as Cinemark generally does in its Amended Complaint.

Moreover, even if Cinemark could establish the requisite "physical loss or damage" to its property (which it cannot), the policy that Cinemark purchased contains a Contamination Exclusion that expressly excludes from coverage "contamination, and any cost due to contamination including the ability to use or occupy property or any cost of making property safe or suitable for occupancy." The Policy specifically defines "contamination" to include "virus," as well as "disease causing or illness causing agent" and "pathogen or pathogenic organism." Thus, the Contamination Exclusion precludes coverage.

Finally, the policy contains a "loss of use" Exclusion that operates independently to bar Cinemark's claims. Under this provision, Cinemark's inability to use its theaters—which is the gravamen of its Amended Complaint—is also excluded based on this language.

The policy has a limited exception to the exclusions cited above for two Communicable Disease coverages (the "Communicable Disease coverages") that do not require "physical loss or damage." The Communicable Disease coverages are subject to a combined annual aggregate sublimit of $1,000,000, meaning that a total of up to $1,000,000 in Communicable Disease coverage is potentially available, if the coverage requirements are met. The limited Communicable Disease coverages require the "actual not suspected presence of communicable disease" and are subject to other policy requirements, terms and conditions. FM Global requested that Cinemark provide the information necessary to support a claim under the Communicable Disease coverages, but Cinemark refused to provide that information prior to filing suit. Accordingly, FM Global requests that this Court dismiss all of Cinemark's claims.

## II.   PLAINTIFFS' ALLEGATIONS

Cinemark filed suit against FM Global, its property insurer, claiming it is owed policy benefits for its alleged losses due to the COVID-19 pandemic and the resulting government orders closing or restricting its locations. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 1, 72, 96. FM Global issued

property insurance policy number 1051832, with effective dates of coverage April 30th, 2019 to April 30th, 2020 (the "Policy") to Cinemark.[2] Cinemark is a large theater chain "with approximately 332 theatres and 4,522 screens in 42 states, and approximately 200 theatres in 17 countries outside of the U.S." 2nd Am. Comp., Doc. 21, ¶ 13. Cinemark seeks declaratory judgment in favor of coverage, as well as damages for alleged breach of contract, violations of the Texas Insurance Code, and bad faith. *Id.* ¶ 1.

Cinemark attempts to artfully plead that both the presence of COVID-19 and the governmental orders issued to combat it caused direct physical loss or damage to Cinemark's properties. *E.g. id.* ¶¶ 72, 101–103. It first pleads that COVID-19 spreads from person to person—primarily through airborne transmission—and has caused more than 462,000 deaths. *Id.* ¶¶ 41, 45–51. It also pleads that the virus can remain on various surfaces, including in fomites, from between three hours to up to twenty-eight days. *Id.* ¶¶ 62–70. Cinemark pleads that Cinemark had the actual presence of COVID-19 at its locations, which it supports by alleging that "almost 500 [Cinemark] employees had COVID-19 symptoms, were exposed to COVID-19, or tested positive for COVID-19" and, later, that 1,781 have tested positive. *Id.* ¶¶ 84, 145. Cinemark further pleads that governmental orders due to the COVID-19 pandemic closed or restricted its business locations. *Id.* ¶¶ 106–08. Cinemark alleges that it was able to reopen at least some of its locations, though under restrictions and/or with administrative and operational controls like personal protective equipment. *Id.* ¶¶ 109–10, 113, 115. Furthermore, Cinemark pleads it suffered loss because certain shopping malls containing its theaters closed, many films scheduled for release in 2020 and early 2021 will

---

[2] Cinemark attached the Policy as Exhibit A to its Complaint, and Defendant reattaches the Policy as Exhibit A to this Motion for the Court's convenience. The attached Exhibit A is identical to the Exhibit A that Cinemark attached to its Complaint aside from highlighting. Page numbers match those in ECF. On a 12(b)(6) motion to dismiss, a court may consider exhibits attached to the complaint. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

not be released on time or at all, and property near certain of its theaters had infected persons there. *Id.* ¶¶ 176–78.

Cinemark submitted a claim to FM Global on April 20, 2020, and discussed the claim with FM Global on April 27, 2020. *Id.* ¶¶ 160, 228; 2nd Am. Comp. Exhibit E, Doc. 21-5. FM Global provided a reservation of rights letter to Cinemark on May 18, 2020, in which it made a number of requests to Cinemark, including identification of Cinemark locations and individuals at those locations who have tested positive for COVID-19, with the ability to redact identifying personal information. 2nd Am. Comp., Doc. 21, ¶ 229; 2nd Am. Comp. Exhibit F, Doc. 21-6. FM Global's letter also requested that Cinemark provide "any other information you believe may be relevant to the loss as soon as you are able." 2nd Am. Comp. Exhibit F, Doc. 21-6. Cinemark responded to the letter on July 27, 2020 by identifying one single location with the potential presence of COVID-19 and refusing to identify any individuals or any other information, stating then that it did not have that information despite now pleading that it is aware of 1,781 employees that have tested positive. 2nd Am. Comp. Exhibit H, Doc. 21-8; 2nd Am. Comp., Doc. 21, ¶ 145. Notably, nowhere does Cinemark plead that it submitted information supporting the Amended Complaint's numerous factual allegations of thousands of exposed or infected employees, copious other locations with COVID-19, or other alleged support for its loss to FM Global. Furthermore, as Cinemark itself admits, it has not provided the sworn proof of loss required by the Policy and requested by FM Global, alleging only that it requested an extension that FM Global did not grant. 2nd Am. Comp., Doc. 21, ¶¶ 236, 240; *see also* Policy, Exhibit A, at 72 (requiring the insured to "give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the Company."). As a recently added exhibit demonstrates,

Cinemark has refused to work directly with FM Global at all. 2nd Am. Comp. Exhibit I, Doc. 21-9, at 2.

Cinemark itself admits that FM Global has not denied Cinemark's claim or provided it with a written coverage decision, though Cinemark makes the conclusory allegation that FM Global has thereby effectively denied Cinemark's claim. 2nd Am. Comp., Doc. 21, ¶ 265–66. As is clear from Cinemark's own allegations, however, the absence of a coverage decision from FM Global derives from Cinemark's own refusal to provide requested claim information that Cinemark now alleges is within its possession. Rather than provide the information requested that would allow FM Global to evaluate and make a claims decision, Cinemark instead chose to withhold such information from FM Global and file suit alleging, paradoxically, that FM Global has acted in bad faith.

## III.   RELEVANT TERMS AND CONDITIONS OF THE POLICY

### A.   General Framework of the Policy

As Cinemark itself admits, the Policy Declarations state that the Policy insures "property . . . against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded . . . ." 2nd Am. Comp., Doc. 21, ¶ 15; Policy, Exhibit A, at 2.[3] That is, to the extent there is physical loss or damage to property that is insured by the Policy, such loss or damage will be covered (assuming all other Policy requirements are met) unless a specified exclusion applies to bar coverage. Cinemark bears the burden to meet this threshold coverage requirement and must show that it sustained physical loss or damage to covered property.

The Policy contains exclusions as well as exceptions to those exclusions. As the preamble to the "EXCLUSIONS" provisions of the Property Damage section notes: "In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated[.]"

---

[3] Cinemark refers to this as the "'all risks' coverage." *E.g.* 2nd Am. Comp., Doc. 21, ¶ 117.

Policy, Exhibit A, at 22. Therefore, the basic operation is as follows: The Policy will cover an event of physical loss or damage to covered property unless an exclusion applies, and an exclusion will apply unless an exception to that exclusion "is otherwise stated" in the Policy. *See id.*

The Policy also details specific coverages, including coverages for Time Element loss directly resulting from physical loss or damage, and the requirements to trigger those coverages, which are subject to any applicable exclusions and specified limits and sub-limits. *See, e.g., id. at* 49. The Policy sets forth two unambiguous exclusions that apply to Cinemark's claimed loss: the Contamination Exclusion and the Loss of Use Exclusion. These exclusions appear under a subsection entitled "Exclusions," and apply to the entire Policy, including coverages provided under the Time Element coverage part. *Id.* at 22, 26.

The Policy language in the Time Element coverage part reinforces the applicability of these exclusions to Time Element coverages. It states: "TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGE EXTENSIONS of this section of the Policy: . . . C. is subject to the Policy provisions, *including applicable exclusions* and deductibles, all as shown in this section and *elsewhere in this Policy*." *Id.* at 49 (emphasis added). Furthermore, the "**TIME ELEMENT EXCLUSIONS**" section similarly confirms that the exclusions detailed therein apply "[i]n addition to the exclusions elsewhere in this Policy . . . ." *Id.* at 59. Thus the Contamination Exclusion and the Loss of Use Exclusion apply to both property damage and the Time Element coverages and extensions under which Plaintiffs make their claim.

### B.   Physical Loss or Damage Required

With the exception of the limited Communicable Disease coverages,[4] the Policy provisions relied upon by Cinemark require "physical loss or damage" as a prerequisite to coverage, as noted in italics below:

| Protection and Preservation of Property | ". . . reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, *insured physical loss or damage* to such insured property."[5] |
|---|---|
| Time Element | "This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, *directly resulting from physical loss or damage of the type insured . . . .*"[6] |
| Extra Expense | As a Time Element Coverage, is subject to the above Time Element limitation on page 49.[7] |
| Contingent Time Element Extended | "This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY *directly resulting from physical loss or damage of the type insured to property of the type insured* at **contingent time element locations** located within the TERRITORY of this Policy."[8] |
| Civil or Military Authority | "This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the *direct result of physical damage of the type insured* at the insured **location** or within five statute miles/eight kilometres of it."[9] |
| Ingress/Egress | "This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location**, whether or not the premises or property of the Insured is damaged, provided that such prevention is a direct result of physical damage of the type insured to property of the type insured."[10] |
| Logistics Extra Cost | "This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials . . . provided that such disruption is *a* |

---

[4] The Policy's limited Claims Preparation coverage does not require "physical loss or damage," but is contingent on an insured loss for which the company has accepted liability, as discussed further below. *See id.* at 33–34.
[5] *Id.* at 43.
[6] *Id.* at 49.
[7] *See id.* at 50, 54.
[8] *Id.* at 63.
[9] *Id.* at 62.
[10] *Id.* at 63.

|  | *direct result of physical loss or damage of the type insured to property of the type insured* located within the TERRITORY of this Policy."[11] |
| Attraction Property | "This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to an insured **location** and is within 1 statute mile/1.6 kilometres of the insured **location**."[12] |

### C.    Applicable Exclusions: The Contamination Exclusion and the Loss of Use Exclusion

#### i.    The Contamination Exclusion

The Policy specifically excludes "**contamination**," which is defined as:

any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, *pathogen or pathogenic organism*, bacteria, *virus, disease causing or illness causing agent*, fungus, mold or mildew.

*Id.* at 82 (emphasis added). "**Contaminant**" is further defined as: "anything that causes

**contamination**." *Id.* The definition of "contamination," and its reference to "virus," "pathogen,"

"pathogenic organism", and "disease causing or illness causing agent," clearly encompasses

SARS-CoV-2/COVID-19.

With contamination defined, the Policy sets out the following exclusion relating to

contamination (the "Contamination Exclusion"):

D.    This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1)    **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.

---

[11] *Id*. at 64.
[12] *Id*. at 67.

*Id.* at 26. Thus, the Policy excludes, with respect to all coverages, any contamination by virus and any cost due to such contamination, unless there is an exception.

### ii.     The Loss of Use Exclusion.

Finally, the Policy also excludes "loss of use" (the "Loss of Use Exclusion"). *Id.* at 22. Cinemark's claimed losses arise from its inability to use its properties—in full or in part—due to governmental orders and COVID-19. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 73–74, 80–81, 104, 112 (¶ 112: "The Governmental Orders continue to deny Cinemark the safe, functional and reliable insured use of its property."). As such, the Loss of Use Exclusion is also implicated and bars coverage unless an exception applies.

### D.     The Policy's Communicable Disease Coverages Are Narrow Exceptions to the Contamination and Loss of Use Exclusions.

The Policy's Communicable Disease coverages are two potentially applicable exceptions to the Contamination Exclusion and the Loss of Use Exclusion, if the conditions of those coverages are met. The Policy defines "**communicable disease**," in relevant part, as "disease which is: 1. Transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges . . . ." *Id.* at 82. It then provides coverage specific to communicable disease:

> If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:
>
> 1)     An order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or
>
> 2)     A decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:
>
> 1)     cleanup, removal and disposal of the actual not suspected presence of **communicable disease** from insured property; and

2)      actual costs or fees payable to public relations services or actual costs of
using the Insured's employees for reputation management resulting from
such presence of **communicable disease** on insured property.

*Id.* at 34.

In addition, if the above-quoted conditions are met, the Policy potentially covers certain

Time Element loss from communicable disease. *Id.* at 69. The Communicable Disease coverages

are subject to a combined annual aggregate sublimit of $1,000,000, meaning that a total of

$1,000,000 in coverage is potentially available to Plaintiff, provided that all Policy requirements

for these coverages are met. *Id.* at 12, 14.

As noted above, in the event of an insured loss for which the company has accepted

liability, the Policy also potentially provides coverage for "Claims Preparation Costs," which

covers certain costs "for producing and certifying any particulars or details contained in the

Insured's books or documents, or such other proofs, information or evidence required by the

Company resulting from insured loss payable under this Policy for which the Company has

accepted liability." *Id.* at 33–34. This coverage is limited to "USD25,000 plus 50% of the amount

recoverable under this coverage in excess of USD25,000." *Id.* at 12.

Per their terms, the limited Communicable Disease coverages do not require physical loss

or damage. They do, however, require the "actual not suspected" presence of communicable

disease along with the requisite "order of an authorized governmental agency" or "decision of an

Officer of the Insured" relating to "such presence of **communicable disease**." *Id.* at 34, 69. FM

Global has not received any claim submission from Cinemark demonstrating that it has met the

threshold requirement of "actual not suspected presence," or that it has satisfied the Policy's other

requirements for these limited Communicable Disease coverages. *See* 2nd Am. Comp. Exhibit H,

Doc 21-8.

## IV.   LEGAL STANDARD

### A.   Motion for Judgment on the Pleadings Standard

"Courts evaluate a motion for judgment on the pleadings by employing 'the same standard as a motion to dismiss under Rule 12(b)(6).'" *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *1 (E.D. Tex. Dec. 7, 2020) (citing *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This determination "is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1940. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Id.* at 1951. Next, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* The court construes all well-pleaded facts in the complaint as true, viewing them in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007). The Court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### B. Insurance Contract Interpretation Standard

Under Texas law, insurance policies are read "using the ordinary rules of contract interpretation." *Tanner v. Nationwide Mut. Fire Ins. Co*., 289 S.W.3d 828, 831 (Tex. 2009). Policies are given their "plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning." *Id.* Courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 134 (Tex. 1994).

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the policy as a whole in light of the circumstances present when the contract was entered." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (citing *Kelley-Coppedge*, 980 S.W.2d at 464). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co*., 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126). "If the terms of a contract are reasonably susceptible to two differing interpretations, then that contract is ambiguous. Any ambiguity in a contract is resolved in favor of the insured." *Potomac Ins. Co. of Illinois v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550 (5th Cir. 2000) (citation omitted) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). But the "fact that the parties may disagree about the policy's meaning does not create an ambiguity." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

The insured party bears the burden of proving coverage. *JAW The Pointe, LLC, v. Lexington Ins. C*o., 460 S.W.3d 597, 603 (Tex. 2015). If coverage exists, the burden shifts to the insurer, who must demonstrate that an exclusion applies. *Id.* Finally, to prove liability in the case

of an exclusion, the insured must "show that an exception to the exclusion brings the claim back within coverage." *Gilbert*, 327 S.W.3d at 124.

## V.   <u>ARGUMENT</u>

Cinemark cannot succeed on its breach-of-contract claim, both because it has not alleged physical loss or damage, and because the Contamination Exclusion, which excludes virus and loss by virus, and the Loss of Use Exclusion bar its claims. In addition, its request for declaratory judgment should be denied as redundant, and its bad-faith claims should be denied because FM Global is not liable for breach of contract and had a good-faith basis for its actions.

### A.   **Cinemark Cannot Succeed on Its Breach-of-Contract Claim**

### i.   **Cinemark Has Not Plausibly Alleged "Physical Loss or Damage" to Its Properties Because Neither COVID-19 Nor the Related Governmental Orders Are "Physical Loss or Damage."**

District courts in Texas have repeatedly and unanimously held that the presence of COVID-19—whether present at a specific insured property or supposedly omnipresent in a general area—is not "physical loss or damage" to property. Actual structural alteration is required to constitute physical loss. *E.g. Selery Fulfillment, Inc. v. Colony Ins. Co.*, No. 4:20-CV-853, 2021 WL 963742, at *6 (E.D. Tex. Mar. 15, 2021) (holding that "actual structural alteration is required to constitute physical loss") (Mazzant, J.); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2021 WL 972878, at *8 (W.D. Tex. Jan. 21, 2021) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated.").[13] Likewise, these courts have held that government orders closing or restricting properties as a result of COVID-19 are not the result of physical loss or damage. *E.g. id.*

---

[13] *See also Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *3 ("The regulation causes no changes to the structure of the property, and there is no pleading that the virus itself was present on and altered the

The Texas courts that have denied coverage have done so in accordance with Fifth Circuit precedent. "As a general matter, property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 Fed. App'x 465, 470 (5th Cir. 2006). Despite Cinemark's conclusory legal allegation to the contrary, the phrase "physical loss or damage" is not ambiguous. *Hajer v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *2; *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.,* 2021 WL 972878, at *5. As this Court has noted, the Fifth Circuit "reasons that physical loss requires substantive concrete damage." *Selery*, 2021 WL 963742, at *6 (citing *Hartford*, 181 F. App'x at 470).[14] As another District court has observed, "within our Circuit, the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'" *Diesel Barbershop*, 479 F. Supp. 3d at 360 (citing *Hartford*, 181 F. App'x at 470). This Fifth Circuit standard derives from *Couch on Insurance*, a predominant insurance law treatise:

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Terry Black's Barbecue*, 2021 WL 972878, at *6 (quoting *Hartford*, 181 F. App'x at 470 (quoting 10A *Couch on Ins*. § 148:46 (3d ed. 2005))).

---

property."); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 360 (W.D. Tex. Aug. 13, 2020) (holding that the insureds failed to plead a direct physical loss because there was no tangible injury to property from COVID-19); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20- CV-00680, 2020 WL 6578417, at *6 n.7 (W.D. Tex. Oct. 26, 2020) ("[I]n recent months, numerous courts . . . have held that the lost use of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute 'direct physical loss of' a property such that it may be the basis for a claim for loss of business income."); Order, *Ybarra Invs. Inc. v. Scottsdale Ins. Co.*, No. 2020-25079 (333rd Dist. Ct., Harris County, Tex. Dec. 10, 2020) (granting summary judgment for insurer where insurer argued that there was no physical loss or damage, and a virus exclusion precluded coverage) (the court's Order and the insurer's Motion for Summary Judgment are attached as Exhibits B and C, respectively, to this Motion).

[14] *See also Diesel Barbershop*, 479 F. Supp. 3d at 360 (also citing *Hartford*, 181 F. App'x at 470); *see also Hajer*, 2020 WL 7211636, at *2 (finding that the "scope of the term "physical loss" is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'").

As a result, Texas courts have repeatedly found that COVID-19 claims fail because COVID-19 does not constitute a "distinct, demonstrable physical alteration of the property." As the *Terry Black's* court in the Western District held, "[e]ven assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant." *Id.* at *7. The court went on to approvingly quote a West Virginia district court that held: "In short, the pandemic impacts human health and human behavior, not physical structures." *Id.* (quoting *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020)); *see also Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 C 3311 (S.D.N.Y. 2020), ECF No. 25, Ex. B at 5:3–4 (denying a publisher's motion for preliminary injunction because COVID-19 does not cause direct physical loss, leading to a finding of no coverage—as the judge stated at the hearing, COVID-19 "damages lungs. It doesn't damage printing presses.").

Texas courts have also repeatedly rejected property insurance claims based on the governmental shutdown orders enacted due to COVID-19, whether the insured alleged that the orders were due to physical loss or damage, or alleged that the orders themselves caused physical loss or damage. *E.g. Selery*, 2021 WL 963742, at *8; *Terry Black's*, 2021 WL 972878, at *8–9; *Hajer*, 2020 WL 7211636, at *3. The Policy coverage for Civil or Military Authority, for example, requires that the order be "the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it." Policy, Exhibit A, at 62. But governmental shutdown orders were issued in response to the global pandemic, not in response to the presence of or damage from COVID-19 at any particular location. *See, e.g., Selery*, 2021 WL

963742, at *8 ("Similarly, the government orders here were put into place because of the anticipated threat of COVID-19 throughout the state, city, and county—not damage at any properties nearby."); *Terry Black's*, 2021 WL 972878, at *9 ("The civil authority orders were issued in response to the global pandemic, not in response to the actual or alleged presence of the virus that causes COVID-19 at Plaintiffs' restaurants."). Nor do the government orders cause any physical loss or damage to property—they merely limit or restrict the insured's use of the premises due to the need to limit person-to-person transmission of the virus, and when they are lifted the insured can promptly reopen, as Cinemark pleads that it has done in some locations. *See Hajer*, at *3 ("The regulation causes no changes to the structure of the property . . . .").

Cinemark attempts to plead its purely economic loss as physical loss or physical damage, and these phrases appear repeatedly throughout its complaint. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 2, 73–74, 78–81, 99, 103–105, 147–50. But an "insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property." *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020). Merely "intoning the conclusory mantra that [an insured] 'experienced direct "physical damage" to its property because of COVID-19'" is insufficient to allege physical loss or damage. *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 220CV01240JADNJK, 2021 WL 769660, at *4 (D. Nev. Feb. 26, 2021).

Leaving aside its numerous conclusory allegations, Cinemark's factual allegations of physical loss or damage essentially come down to a few assertions:

First, it pleads that COVID-19 is present in its locations on various surfaces and in the air, where it can theoretically remain from between three hours to up to twenty-eight days. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 61–69. This means that, unlike the physical loss or damage caused by the

ravages of a hurricane or a fire, the presence of COVID-19 at Cinemark's locations can be eliminated by simply waiting less than a month for it to disappear. *Circus Circus*, 2021 WL 769660, at *4 (noting that "any alleged surface-contamination is ephemeral—the virus is only detectable on surfaces for 'up to three days.'"). If that will take too long, then routine disinfection will eliminate the virus. *Terry Black's*, 2021 WL 972878, at *8; *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *8–9 (D. Kan. Dec. 3, 2020). A short wait or routine cleaning by Cinemark's own personnel will eliminate the presence of COVID-19, meaning there is no tangible loss or "distinct, demonstrable physical alteration of the property." *Diesel Barbershop*, 479 F. Supp. 3d at 360 (citing *Hartford*, 181 F. App'x at 470); *see also Hajer*, 2020 WL 7211636, at *2.

Though Cinemark pleads that it cannot merely clean its properties' air and surfaces because the virus is continually reintroduced to the property by visiting persons unless it closes or restricts the numbers of persons, this only further demonstrates that it has not suffered direct physical loss or damage to its property. 2nd Am. Comp., Doc. 21, ¶¶ 71–75. Cinemark alleges that people bring COVID-19 onto Cinemark's properties, where COVID-19 can potentially be transmitted to other people. But the "air" is not *physically damaged* by COVID-19—it is simply a medium through which the virus is transmitted *between persons*. One does not repair or replace the "air" in a theater or any other business; rather, businesses (and courts) have implemented mask requirements, social distancing and other measures to reduce *person-to person* transmission. This is no different than any other virus, bacteria, or germ like the common cold, yet common sense dictates that an insured should not be able to recover under a property insurance policy every time a person with a cold enters its property. *See Iqbal*, 129 S.Ct. at 1940 (holding that a court should use its common sense

when deciding on a motion to dismiss).  The virus harms neither surfaces nor air: it harms people. *E.g. Terry Black's Barbecue*, 2021 WL 972878, at \*7. Cinemark's argument is nonsensical.

Cinemark also attaches the reports of two purported experts from an entirely separate, Nevada case in which the insured is represented by Cinemark's counsel and a motion for judgment on the pleadings is pending. 2nd Am. Comp., Doc. 21, ¶¶ 151–52; Exhibit M, Doc. 21–13; Exhibit N, Doc. 21–14. These undesignated reports are not properly before the Court here and need not be considered. Expert testimony is unnecessary and inappropriate at the pleading stage, because the court would have to "confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage" and "rule on the expert's qualifications." *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 842 (N.D. Tex. 2018) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285–286 (5th Cir. 2006)); *see also Little v. KPMG LLP*, 575 F.3d 533, 539 (5th Cir. 2009). Cinemark needs no expert testimony to make its "short and plain statement" of its claims. Fed. R. Civ. P. 8(a)(2). Rather, expert testimony is reserved for discovery under Rule 26, after the pleading stage. Fed. R. Civ. P. 26(a)(2). Furthermore, the purported expert reports do nothing more than track Cinemark's broad and conclusory allegations that COVID-19 causes physical damage to property, which is contrary to the Fifth Circuit's standard of "distinct, **demonstrable** physical alteration of the property" and numerous cases cited herein. *See, e.g., Hartford*, 181 F. App'x at 470 (emphasis added); *Selery*, 2021 WL 963742, at \*6. The expert reports provide nothing probative to the Second Amended Complaint.

Second, Cinemark alleges that it was required to make changes to its property to control the future spread of COVID-19. 2nd Am. Comp., Doc. 21, ¶ 77. But this argument also fails. The Policy's Protection and Preservation of Property provision provides coverage for costs to temporarily protect and preserve insured property, but only if "such actions are necessary due to

actual, or to prevent immediately impending, *insured physical loss or damage to such insured property*." Policy, Exhibit A, at 43 (emphasis added). Because COVID-19 does not constitute "physical loss or damage" to property, the coverage does not apply.

Third, Cinemark conclusorily alleges that "the Government Orders caused physical loss to property, including Cinemark Locations, by depriving Cinemark of physical possession of insured property." 2nd Am. Comp., Doc. 21, ¶ 103. In order to recover for Civil or Military Authority, Cinemark must plead factual allegations that the governmental orders were the direct result of physical damage of the type insured. Policy, Exhibit A, at 62. But, as established by the case law and analysis above, COVID-19 does not cause any tangible loss or "distinct, demonstrable physical alteration of the property." Nor does the temporary loss of property due to governmental orders cause physical loss or damage to property. *See Hajer*, 2020 WL 7211636, at *3 ("The regulation causes no changes to the structure of the property . . . ."). This is simply a loss-of-use claim, and, as stated previously, Loss of Use is clearly excluded by the Policy. *See supra* Section V.A.ii. Cinemark cannot recover under these allegations either.

Cinemark's claims based on allegations of physical loss or damage due to COVID-19 or resulting governmental orders are insufficient to establish coverage as a matter of law, and the Court should grant judgment on the pleadings for FM Global.

### ii.    The Contamination Exclusion Bars Coverage

As a separate and independent basis for dismissal, the Policy contains an unambiguous exclusion for viruses and disease-causing agents. The Policy excludes "**contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." Exhibit A, Policy, at 26. This exclusion incorporates the definition of contamination, which is defined in relevant part as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant,

hazardous material, poison, toxin, *pathogen or pathogenic organism*, bacteria, <u>*virus*</u>, *disease causing or illness causing agent*, fungus, mold or mildew." *Id.* at 82 (emphasis added).

Cinemark's often-repeated allegations that its losses stem from the presence of COVID-19 at its properties and elsewhere mean that the properties experienced *contamination* from a *virus* as defined in the Policy. Cinemark has thus pleaded itself squarely into the Contamination Exclusion and out of coverage. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 41–95, 99–116, 137–179. The Contamination Exclusion also expressly excludes precisely the loss of use and mitigation claims Cinemark has pleaded, by excluding "any cost due to **contamination** *including the inability to use or occupy property* or any cost of *making property safe or suitable for use or occupancy*." Exhibit A, Policy, at 26 (emphasis added). Moreover, because COVID-19 contamination is excluded, it cannot constitute "physical loss or damage *of the type insured*" as required by the coverage provisions relied upon by Cinemark as discussed in section III. B., above, including the Policy's Time Element, Contingent Time Element, Protection and Preservation of Property, Attraction Property, Civil or Military Authority, Logistics Extra Cost and Ingress/Egress provisions.

Numerous courts in Texas and elsewhere have found that virus exclusions unambiguously apply to COVID-19 claims, including claims made for Business Interruption and additional coverages like Civil Authority. *E.g. Hajer*, 2020 WL 7211636, at *4–5; *Diesel Barbershop*, 479 F. Supp. 3d at 360–361; *Vizza Wash*, 2020 WL 6578417, at *7. Where an insured pleads that COVID-19 is the reason for its claims, including those based on the same or similar governmental orders found in Cinemark's pleadings, a virus exclusion will negate an insured's claim. *Diesel Barbershop*, 479 F. Supp. 3d at 360–61.

In an effort to avoid the plain, ordinary meaning of the exclusion and its preclusive effects, Cinemark attempts to offer a number of flawed or conclusory allegations that the Contamination

Exclusion, which excludes virus and disease-causing agents, does not apply to its claims. 2nd Am. Comp., Doc. 21, ¶¶ 181–200. First, Cinemark argues that the Policy's Contamination exclusion does not mention "communicable disease," so it cannot exclude COVID-19. *Id.* ¶ 190. It further argues conclusorily that contamination exclusions apply only to "traditional pollution" from a "*natural* process" not "*natural* catastrophes such as pandemic." *Id.* ¶ 198. But, as Cinemark admits, the exclusion plainly mentions "virus" and "disease-causing or illness-causing agent" as well as "pathogen" or "pathenogenic organism." *Id.* ¶ 190. No reasonable policyholder reading such terms would conclude that they had coverage for damage to property from contamination by a virus or a disease-causing agent like COVID-19. An insurer is not required to use particular words or language in drafting an exclusion, provided the language used is clear. "Importantly, the fact that [an insurer] could have used even more specific language does not automatically render ambiguous the language that [the insurer] actually used." *Vizza Wash*, 2020 WL 6578417, at *7 (citing *Katrina Canal*, 495 F.3d at 210); *see also Diesel*, 479 F. Supp. 3d at 361–62. Cinemark complains that FM Global should have been aware of the potential impacts of pandemics, but this assertion is irrelevant in light of the Policy's virus exclusion, which plainly applies to the disease-causing COVID-19 virus. 2nd Am. Comp., Doc. 21, ¶¶ 96–97. As noted, an insurer is not required to use particular words or language in drafting an exclusion.

Alternatively, Cinemark alleges that the Contamination Exclusion is ambiguous, without specifying the alleged ambiguity. *Id.* ¶ 200. To the extent that Cinemark contends an ambiguity exists because the Policy excludes Contamination but potentially provides limited coverage for "Communicable Disease," there is no prohibition against an insurer providing a limited coverage exception to an exclusion. The Policy clearly provides that exceptions operate in this manner through the introductory language described at the outset: that an exclusion applies unless an

exception to that exclusion "is otherwise stated" in the Policy. Policy, Exhibit A, at 22; *see also Independence Barbershop, LLC v. Twin City Fire Insurance Co*., A-20-CV-00555-JRN, 2020 WL 6572428, at *3–4 (W.D. Tex. Nov. 4, 2020) (finding that both a blanket virus exclusion *and* the provision that provided limited virus coverage were *both* effective, unambiguous, and noncontradictory); *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 2021 WL 391418, at *3 (E.D. Mich. Feb. 4, 2021) (rejecting argument that a communicable disease provision created ambiguity because it could be read harmoniously with virus exclusion). There is no conflict and the provisions can—and must—be read harmoniously under Texas law. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

Finally, Cinemark brazenly alleges that the Communicable Disease sublimit does not cap Cinemark's losses because it can recover under "any other coverage under the Policy that may also apply to loss or damage resulting from or caused by **communicable disease**, including physical loss or damage resulting from or caused by **communicable disease** at or away from Cinemark Locations." 2nd Am. Comp., Doc. 21, ¶ 209. Cinemark's assertion, however, would impermissibly ignore and/or render meaningless multiple Policy provisions, including the Contamination Exclusion, the Communicable Disease coverages and the Policy's $1,000,000 coverage sublimit for Communicable Disease in violation of well-settled Texas rules of contract interpretation. *See Gilbert*, 327 S.W.3d at 126 (holding that courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.").

Cinemark's allegations fail to offer any reasonable—or even plausible—interpretation that would countenance re-writing the policy to eliminate just the Policy provisions that Cinemark simply does not like or finds inconvenient to its fatally-flawed coverage theory. *Gilbert*, 327 S.W.3d 118, 126 (Tex. 2010). The operation of the Policy is not difficult to ascertain: it excludes

virus and disease-causing agents with respect to all coverages, but writes back in limited coverage for communicable disease. The Contamination Exclusion in the Policy unambiguously bars Cinemark's claims under all coverages, with the potential exception of the limited carve-out found in the Communicable Disease coverages.

### iii.     The Loss of Use Exclusion Bars Coverage.

The Policy's separate Loss of Use Exclusion is a further bar to Cinemark's claims. The Policy clearly "excludes . . . 3) loss of market or loss of use." Exhibit A, Policy, at 22. Cinemark's Amended Complaint is replete with claims that its losses derive from loss of use of its properties. *E.g.* 2nd Am. Comp., Doc. 21, ¶¶ 73–74, 80–81, 104, 112 (¶ 112: "The Governmental Orders continue to deny Cinemark the safe, functional and reliable insured use of its property.").

Courts addressing COVID-19 claims have recognized that the Loss of Use Exclusion precludes coverage for pure loss of use claims, unaccompanied by physical loss or damage. *Selane Products, Inc. v. Continental Cas. Co.*, No. 220CV07834MCSAFM, 2020 WL 7253378, at *6 (C.D. Cal. Nov. 24, 2020) (finding the Policy precluded coverage in part because it had an exclusion for "loss of use or loss or market"); *Whiskey River on Vintage, Inc. v. Illinois Cas. Co*., No. 4:20-CV-185-JAJ, 2020 WL 7258575, at *18 (S.D. Iowa Nov. 30, 2020) (finding in addition to the failure of the insured to demonstrate direct physical loss or damage, which requires the tangible alteration of property and that loss of use alone is insufficient, the "loss of use" exclusion applied to preclude the insured's COVID-19 claim); *Harvest Moon Distributors, LLC v. S.-Owners Ins. Co*., No. 620CV1026ORL40DCI, 2020 WL 6018918, at *6 (M.D. Fla. Oct. 9, 2020) (applying the loss of use exclusion in part to preclude coverage). In *Salon XL Color & Design Group, LLC v. West Bend Mutual Insurance Co.*, for example, the court found that the insureds' argument that it could not "use its property for its intended purpose" fell plainly within the loss of use exclusion. 2021 WL 391418 at *4. Here, the claimed losses directly implicate the Policy's Loss of Use

Exclusion, which applies to bar coverage unless specific exceptions are "otherwise stated" in the Policy. Exhibit A, Policy, at 22.

### B.   FM Global has not breached the contract under the Communicable Disease coverages.

As noted, Cinemark admits that FM Global has not denied Cinemark's claim under the Communicable Disease coverages or provided it with a written coverage decision. 2nd Am. Comp., Doc. 21, ¶ 265–66. Cinemark also admits that it has not provided the sworn proof of loss required by the Policy and requested by FM Global. 2nd Am. Comp., Doc. 21, ¶¶ 236, 240; *see also* Policy, Exhibit A, at 72 (requiring the insured to "give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the Company."). Importantly, Cinemark does not plead that it has submitted information supporting the Second Amended Complaint's numerous factual allegations of thousands of exposed or infected employees, copious other locations with COVID-19, or other alleged support for its loss to FM Global. A recently added exhibit demonstrates that Cinemark now refuses to work directly with FM Global. 2nd Am. Comp. Exhibit I, Doc. 21-9, at 2. While FM Global remains willing to review and evaluate specific information provided by Cinemark in support of a claim under the Policy's Communicable Disease coverages, Cinemark's allegations and admissions do not support a breach of contract claim against FM Global and its claim should be dismissed.

### C.   Cinemark's Request for Declaratory Judgment Should Be Dismissed as Redundant of Its Breach-of-Contract Claim.

District courts in Texas and throughout the Fifth Circuit routinely dismiss claims for declaratory judgment when such claims are entirely duplicative of another claim in the suit. *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 6255733, at *6 (E.D. Tex. Nov. 22, 2019) ("Indeed, courts in the Fifth Circuit 'have regularly rejected declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the

lawsuit.'"). In particular, where an insured's claim for breach of contract involves the same relief as its claim for declaratory judgment, a district court appropriately dismisses the claim. *See Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2011 WL 676955, at *9 (E.D. Tex. Jan. 27, 2011) (Mazzant, J.), *report and recommendation adopted*, No. 4:09-CV-370, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011).

Count I of Cinemark's Amended Complaint requests declaratory judgment on each of its other causes of action, and *only* on those causes of action: breach of contract, bad faith, and violations of the Texas Insurance Code. 2nd Am. Comp., Doc. 21, ¶¶ 271–74. Cinemark's request for declaratory judgment is entirely redundant and should be dismissed with prejudice.

**D.    FM Global is not liable on Cinemark's various extra-contractual causes of action because FM Global is not liable to Cinemark for breach of contract and because FM Global had a reasonable basis for its actions.**

Cinemark asserts claims against FM Global for violations of the Texas Insurance Code and common-law bad faith. *Id.* ¶¶ 308–30. Primarily, Cinemark's extracontractual claims follow its breach of contract claims: that FM Global (purportedly) wrongfully applied the Policy to Cinemark's claim and "effectively denied" Cinemark's claim. *See id.* ¶¶ 224–70, ¶¶ 308–30. Cinemark also alleges that FM Global did not investigate Cinemark's claimed losses—despite Cinemark refusing to provide information to FM Global to investigate. *See id.* ¶ 232; 2nd Am. Comp. Exhibit H, Doc. 21-8. Its only other allegation of bad faith, that FM Global disseminated a "Talking Points" document to its adjusters that explained the coverages of the Policy in a manner consistent with the Policy, as analyzed *supra*, demonstrates nothing more than that FM Global gave its adjusters correct guidance in the proper interpretation of Cinemark's Policy. *See id.* ¶¶ 244–264.

In the first place, this Court should grant judgment for FM Global because Cinemark cannot maintain any of these causes of action unless it is entitled to policy benefits. Where there is no

entitlement to benefits, there is no recovery for extra-contractual claims. *E.g. Vizza Wash*, 2020 WL 6578417, at *8–9 (denying bad-faith claim where there was no coverage or independent injury)*; USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *Quibodeaux v. Nautilus Ins. Co.*, 655 Fed. App'x 984, 987 (5th Cir. 2016) ("Under Texas law, to prevail on a common-law bad faith claim, an insured must first show that the insurer breached the contract. The same requirement applies to claims for statutory bad faith under Chapter 541 of the Insurance Code and under the Trade Practices Act." (citations omitted)). In particular, "misrepresentation claims under the Texas Insurance Code that are based on a party's failure to fulfill its contractual duties are more properly raised as breach of contract claims and should be dismissed." *Terry Black's*, 2020 WL 7351246, at *10 (citing *Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *6 (W.D. Tex. Mar. 17, 2017)). The only exception is when an insurance company commits "some act, so extreme, that would cause injury independent of the policy claim." *Menchaca*, 545 S.W.3d at 499; *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 437 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) ("To recover any damages beyond policy benefits, Zhu must establish that the statutory violation caused an injury that is independent from the loss of benefits."). According to the Texas Supreme Court, Texas courts have "yet to encounter" an instance of a truly independent injury in this type of dispute. *Menchaca*, 545 S.W.3d at 499. Furthermore, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

As demonstrated in the previous sections of this Motion, FM Global has not denied Cinemark's claim, rendering its claim for bad faith premature. Indeed, FM Global's actions, as

alleged, are entirely consistent with its correct interpretation of the Policy that Cinemark, at best, can recover under the limited Communicable Disease coverages if it can provide the necessary support. Cinemark has not alleged any independent injury, either—all it has alleged are loss of policy benefits. Cinemark therefore cannot recover for alleged violations of the Texas Insurance Code.

FM Global is also entitled to summary judgment on Cinemark's extra-contractual claims because Cinemark's allegations demonstrate that FM Global had a reasonable basis for its actions, and that there exists nothing other than a bona-fide dispute over coverage. "No action for a breach of the duty of good faith and fair dealing may lie when a carrier possesses a reasonable basis for its actions." *Wolford v. Am. Home Assur. Co*., 263 S.W.3d 12, 17 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex. 1997)). An insurer does not commit bad faith "merely by erroneously denying a claim" or where there is simply a "bona fide coverage dispute." *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc*., No. 01-17-00881-CV, 2019 WL 7044667, at *16 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, no pet). In order to prevail on a bad-faith claim, the insured "must show that there was no reasonable basis for denying the claim . . . ." *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 285 (Tex. App.—San Antonio 1992, writ denied); *see also Alhamzawi v. GEICO Cas. Co*., 216 F. Supp. 3d 764, 769 (N.D. Tex. 2016).

This litigation is about nothing more than the bona-fide coverage disputes previously discussed in this Motion and whether Cinemark has supported its claim despite not providing the required information or proof of loss to support its claim. 2nd Am. Comp., Doc. 21, ¶¶ 229, 236, 240; 2nd Am. Comp. Exhibit F, Doc. 21-6; 2nd Am. Comp. Exhibit H, Doc. 21-8; *see also* Policy, Exhibit A, at 72 (requiring the insured to "give a signed and sworn proof of loss to the Company

within 90 days after the loss, unless that time is extended in writing by the Company."). FM Global took no action in bad faith, and Cinemark has made no allegation of any misrepresentation or other action in bad faith. The claim remains open—not denied, effectively or actually—because Cinemark has not presented FM Global with the support for its claim that it refused to provide but now alleges it has. *Id.* FM Global has a reasonable basis for not paying this claim, and the evidence demonstrates nothing more than a bona fide coverage dispute.

Thus, both because FM Global has not breached its contract with Cinemark, and because FM Global had a reasonable basis for its claims decisions, FM Global is entitled to judgment on all of Cinemark's extra-contractual claims.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Factory Mutual Insurance Company ("FM Global" or "Defendant") respectfully requests, pursuant to Federal Rule of Civil Procedure 12(c), that this Court grant judgment on the pleadings with respect to the Amended Complaint of Plaintiffs Cinemark Holdings, Inc., Cinemark USA, Inc., CNMK Texas Properties, LC, Century Theaters, Inc., Cinemark Partners II, Ltd., Greeley, Ltd. and Laredo Theatre, Ltd.

FM Global further requests that this Court deny Cinemark leave to amend, both because Cinemark has amended its over-300-paragraph Complaint three times already, and because any amendment on this issue would be futile. *Selery*, 2021 WL 963742, at *6 (denying leave to amend on a COVID-19 claim for physical loss or damage); *Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, No. 20-CV-06786-TSH, 2021 WL 1056627, at *6 (N.D. Cal. Mar. 19, 2021) (denying leave to amend on a COVID-19 claim for physical loss or damage).

Respectfully submitted,


By:_____/s/ Thomas H. Cook. Jr._____
    Thomas H. Cook, Jr.
    Texas Bar No. 00783869
    tcook@zelle.com
    Shannon M. O'Malley
    Texas Bar No. 24037200
    somalley@zelle.com
    Michael P. O'Brien
    Texas Bar No. 24103418
    mobrien@zelle.com

**ZELLE LLP**
901 Main Street, Suite 4000
Dallas, TX 75202-3975
Telephone:    214-742-3000
Facsimile:    214-760-8994

*-and-*
    Emileigh S. Hubbard
    Texas Bar No. 24076717
    ehubbard@hoaf.com

**HENRY ODDO AUSTIN & FLETCHER, P.C.**
1700 Pacific Ave., Suite 2700
Dallas, TX 75201
Telephone:    214-658-1900
Facsimile:    214-658-1919

**ATTORNEYS FOR DEFENDANT FACTORY MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

A true and correct copy of the forgoing has been served on the following counsel of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on March 30, 2021.

Jarrett L. Hale
Texas Bar No. 24046005
jhale@huntonAK.com
Abigail M. Lyle
Texas Bar No. 24095189
alyle@huntonAK.com
Michael Horne
Texas Bar No. 24083200
mhorney@huntonAK.com

**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, TX  75202
Telephone: (214) 979-3000

Michael S. Levine (*Pro Hac Vice*)
mlevine@huntonAK.com

**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037-1701
Telephone: (202) 955-1857

Rachel E. Hudgins (*Pro Hac Vice*)
rhudgins@huntonAK.com

**HUNTON ANDREWS KURTH LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, GA  30308
Telephone:  (404) 888-4000

Michael L. Huggins (*Pro Hac Vice*)
mhuggins@huntonAK.com

**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700 San
Francisco, California 94111
Telephone:  (415) 975-3744

*Attorneys for Plaintiffs*

/s/ Thomas H. Cook, Jr.
Thomas H. Cook, Jr.