# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CINEMARK HOLDINGS, INC., et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.  4:21-CV-00011 |
| | § | Judge Mazzant |
| FACTORY MUTUAL INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant's Motion for Summary Judgment (Dkt. #152) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. #154).  Having considered the motions and the relevant pleadings, the Court finds that Defendant's Motion for Summary Judgment (Dkt. #152) should be **GRANTED**, and that Plaintiffs' Motion for Partial Summary Judgment (Dkt. #154) should be **DENIED**.

## BACKGROUND

This case involves a coverage dispute over the applicability of an "all risk" insurance policy to business interruption losses stemming from the COVID-19 pandemic.  Plaintiffs Cinemark Holdings, Inc., Cinemark USA, Inc., CNMK Texas Properties, LLC, Century Theaters, Inc., Cinemark Partners II, Ltd., Greeley, Ltd., and Laredo Theatre, Ltd. (collectively, "Cinemark") own and operate hundreds of movie theaters across the United States and throughout Central and South America (Dkt. #154 at p. 9).[1]  Defendant Factory Mutual Insurance Company ("Factory Mutual") is a Rhode Island-based commercial insurance provider (Dkt. #59 ¶ 10).

---

[1] For the purposes of this Order, the Court relies only on the undisputed portions of the parties' respective statements of fact.

## I.    The Pandemic

In early 2020, the COVID-19 pandemic reached the United States, causing a public health crisis that impacted every facet of daily life and kicking off a wave of governmental stay-at-home orders intended to curb the spread of the SARS-CoV-2 virus.[2]  On March 16, 2020, due to rising health and safety concerns and governmental orders, Cinemark decided to close its theaters by the end of the day on March 18 (Dkt. #154 at pp. 14–16).   Cinemark's doors remained closed for nearly three months.   During that time, Cinemark developed the "Cinemark Standard," a set of COVID-prevention protocols that included the installation of air purifiers, plexiglass shielding, and sanitizing stations in Cinemark theaters, as well as capacity restrictions, social distancing requirements, and staggered show times (Dkt. #154 at p. 19).    Cinemark began to reopen its theaters in June 2020 (Dkt. #154 at p. 21).

On April 20, 2020, Cinemark filed an initial claim for insurance coverage under two policies issued by Factory Mutual, claiming physical loss and damage caused by COVID-19 and losses stemming from governmental orders that restricted or prohibited access to Cinemark theaters (Dkt. #152 at pp. 17–18).

## II.    The Policies

Specifically, Cinemark submitted claims for coverage under two "all risk" insurance policies issued by Factory Mutual.  The first (Policy No. 1051832) provided Cinemark with coverage from April 30, 2019 to April 30, 2020 (the "2019–20 Policy") (Dkt. #152, Exhibits 1– 2).  The second (Policy No. 1066496) provided coverage from April 30, 2020 to April 30, 2021

---

[2] Both parties acknowledge that SARS-CoV-2 is the virus that causes COVID-19.  For simplicity, the Court will use COVID-19 to refer to both the virus and the disease unless it is necessary to differentiate between the two.

(the "2020–21 Policy") (Dkt. #152, Exhibit 5).  The 2019–20 Policy and the 2020–21 Policy (collectively, "the Policies") are substantively identical (Dkt. #154 at p. 9).

The Policies insure Cinemark's property against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded. . . ." (Dkt. #152, Exhibit 1 at p. 9).  The Policies do not define the phrase "physical loss or damage."

Each Policy has a maximum limit of liability of $500 million per occurrence, with lower limits applicable to specified subcategories of coverage (Dkt. #152, Exhibit 1, pp. 11–16).  The Policies contain two broad categories of coverage that are relevant here: "Property Damage" coverage and "Time Element" coverage.  These coverages are set out in separate sections of the Policies, with various exclusions and extensions.  With few exceptions, "physical loss or damage" to property is a prerequisite for coverage under both the Property Damage and Time Element provisions.

### A.    Property Damage Provisions

The Policies' Property Damage provisions include coverage for "Real Property" and "Personal Property," subject to certain exclusions, which apply "unless otherwise stated." (Dkt. #152, Exhibit 1 at pp. 21–22).[3]

Under the Property Damage provisions, the Policies include an additional coverage for "Communicable Disease Response" (Dkt. #152, Exhibit 1 at p. 34–35).  This grant of coverage provides that," [i]f a location owned, leased, or rented by the Insured has the actual not suspected presence of a communicable disease" and access to that location is restricted, the Policies cover "the reasonable and necessary costs incurred by the Insured at such location," including costs for cleaning, removal, and disposal (Dkt. #152, Exhibit 1 at p. 34–35).  The Policies define a

---

[3] Factory Mutual contends that two of those exclusions are relevant here: the "loss of market or use exclusion," and the exclusion for "contamination and any cost due to contamination" (Dkt. #152, Exhibit 1 at pp. 22; 26).

communicable disease as a disease "which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges" or "Legionellosis" (Dkt. #152 at p. 82). Critically, unlike the other coverage grants in the Property Damage section, the Communicable Disease Response provision does not require "physical loss or damage" (Dkt. #152, Exhibit 1 at p. 34–35).

### B.     Time Element Provisions

The Policies also contain Time Element provisions, which insure "TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured" (Dkt. #152, Exhibit 1 at p. 49). Time Element coverage is subject to a "Period of Liability," which runs "from the time of physical loss or damage of the type insured" and ends "when with due diligence and dispatch the building could be: (i) repaired or replaced; and (ii) made ready for operations, under the same or equivalent physical and operating conditions that existed prior to the damage" (Dkt. #152, Exhibit #1 at pp. 56–57).

The Time Element provisions also include several "TIME ELEMENT COVERAGE EXTENSIONS" and "ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS" (Dkt. #1, Exhibit 152 at pp. 60–71). The latter category contains one extension that is particularly relevant here: the "Interruption by Communicable Disease" extension (Dkt. #152, Exhibit 1 at p. 69). Under this extension, "[i]f a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease" that results in a restriction on access to the property, the Policies will cover "Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such location" (Dkt. #152, Exhibit 1 at p. 69). Excepted from this extension is "any loss resulting from" (1) "the enforcement of any law or ordinance with which the Insured was legally obligated to comply" before the spread of the communicable disease

4

or (2) "loss or damage caused by or resulting from terrorism, regardless of any other cause or event" (Dkt. #152, Exhibit 1 at p. 69). Unlike the primary Time Element coverage, the Interruption by Communicable Disease coverage extension does not require "physical loss or damage" as a prerequisite to coverage (Dkt. #152, Exhibit 1 at pp. 69–70).

Under the 2019–20 Policy, the Communicable Disease Response coverage and the Interruption by Communicable Disease coverage are subject to a $1 million annual aggregate sublimit of liability (as opposed to the larger Policy limit of $500 million per occurrence) (Dkt. #152, Exhibit 1 at p. 12). Likewise, under the 2020–21 Policy, the same provisions are subject to a $10,000 annual aggregate sublimit of liability (Dkt. #152, Exhibit 5 at p. 13).[4]

## III.    The Claims Process

Cinemark submitted a notice of loss under the 2019–20 Policy on April 20, 2020 (Dkt. #154 at pp. 22–23). Factory Mutual acknowledged Cinemark's notice of loss three days later (Dkt. #152, Exhibit 8). On May 18, Factory Mutual sent Cinemark a letter requesting information about the presence of COVID-19 on Cinemark's properties, including any information regarding employees who tested positive for COVID-19 (Dkt. #152 at p. 18). Cinemark responded to this letter on July 27, 2020 (Dkt. #152 at p. 18).

After reopening its theaters, Cinemark submitted an additional notice of loss under the 2020–21 Policy on June 3, 2021 (Dkt. #154 at p. 23). Upon receipt of information indicating that "individuals exhibiting COVID-19 symptoms or with positive test results were on site at Cinemark's locations during the early stages of the pandemic," Factory Mutual paid Cinemark the full limits of liability available under the Communicable Disease Response coverage and the Interruption by Communicable Disease Coverage (Dkt. #152, Exhibit 11 at p. 3; Exhibit 12;

---

[4] This difference in annual aggregate liability is the only substantive difference between the Policies (Dkt. #154 at p. 9).

Exhibit 13).  More specifically, Factory Mutual paid Cinemark $1 million under the 2019–20 Policy and $10,000 under the 2020–21 Policy (Dkt. #152 at p. 20).

In addition to the two Communicable Disease coverages, Cinemark maintains claims under the following provisions, all of which require "physical loss or damage" as a requirement for coverage:

- Protection and Preservation of Property (Dkt. #59 ¶¶ 168–69)

- Time Element (Dkt. #59 ¶¶ 170–72)

- Contingent Time Element Extended (Dkt. #59 ¶¶ 173–74)

- Extra Expense (Dkt. #59 ¶¶ 175–76)

- Civil or Military Authority (Dkt. #59 ¶¶ 177–79)

- Ingress/Egress (Dkt. #59 ¶ 180)

- Logistics Extra Cost (Dkt. #59 ¶¶ 181–82)

- Claims Preparation (Dkt. #59 ¶¶ 166–67)

- Attraction Property (Dkt. #59 ¶ 183)

Despite several months of discussions regarding Cinemark's claims under these provisions, the parties could not reach an agreement regarding coverage.  To date, Factory Mutual has not paid Cinemark under any coverage that requires "physical loss or damage" (Dkt. #154 at p. 23).

## IV.   Procedural History

And so, on November 18, 2020, Cinemark filed suit in the 471st District Court in Collin County, Texas (Dkt. #1).  On December 22, 2020, Factory Mutual removed the case to this Court on diversity grounds under 28 U.S.C. §§ 1332, 1441, and 1446 (Dkt. #1 at p. 1).  After removal, Cinemark amended its complaint several times, most recently on June 3, 2021 (Dkt. #59).  In its Third Amended Complaint, Cinemark asserts causes of action for (1) declaratory judgment,

(2) breach of contract,[5] (3) breach of the covenant of good faith and fair dealing, and (4) violation of the Texas Insurance Code (Dkt. #59 at ¶¶ 275–334).

On October 13, 2022, Factory Mutual filed its motion for summary judgment (Dkt. #152). Cinemark filed a response on November 3, 2022 (Dkt. #162). Factory Mutual replied on November 10, 2022 (Dkt. #167) and Cinemark filed a sur-reply on November 17, 2022 (Dkt. #171).

Likewise, Cinemark filed its own motion for partial summary judgment on October 13, 2022 (Dkt. #154). Factual Mutual responded on November 7, 2022 (Dkt. #165). Cinemark filed its reply on November 14, 2022 (Dkt. #169) and Factory Mutual filed its sur-reply on November 22, 2022 (Dkt. #175).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its

---

[5] Cinemark asserts three separate counts for breach of contract: Count II (breach of the Property Damage coverage), Count III (breach of the Time Element coverage), and Count IV (breach of the Time Element extensions) (Dkt. # 59 at ¶¶ 279–311).

motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Factory Mutual moves for summary judgment on Cinemark's contractual claims, arguing that Cinemark cannot establish coverage under the Policies because there has been no "physical loss or damage" to Cinemark's properties and because the Policies explicitly exclude Cinemark's claims (Dkt. #152).  Factory Mutual also contends that, because Cinemark is not entitled to coverage, Cinemark's extra-contractual claims necessarily fail as a matter of law.  Conversely, Cinemark moves for partial summary judgment on its contractual claims, arguing that it is entitled to coverage as a matter of law because it has established that COVID-19 caused "physical loss or damage" to its properties within the meaning of the Policies (Dkt. #154).

## I.    Applicable Law

Before addressing the coverage issues at the heart of this case, the Court must interpret the Policies.  The parties agree that this interpretation is governed by Texas law.  Under Texas law, the interpretation of an insurance contract is a question of law, to which courts apply the general rules of contract construction.  *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).  The Court's primary task is to "ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement."  *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015).  To that end, the Court gives the words in an insurance policy their ordinary and generally accepted meaning unless the policy indicates that the parties intended to impart a technical or different meaning.  *Id.*  "When terms are defined in an insurance policy, those definitions control the interpretation of the policy."  *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003)).  Ultimately, the Court must interpret an insurance policy in a way that (1) confers meaning to all of its terms, (2) harmonizes and gives

effect to all of its provisions, and (3) avoids rendering any parts of the policy meaningless.  *See, e.g.*, *Great Am. Ins. Co. v. Employers Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (applying Texas law).

Texas law makes clear that the insured bears the initial burden of establishing coverage under the terms of an insurance policy.  *O'Quinn v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (applying Texas law).  If the insured establishes coverage, the burden shifts to the insurer to prove that the loss is excluded from coverage.  *Id.*  If an exclusion applies, the insured must then establish that an exception to the exclusion exists to restore coverage.  *See id.*; *Gilbert*, 327 S.W.3d at 124.

If an insurance policy is unambiguous, the Court will construe it as a matter of law and enforce it as written.  *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527–28 (Tex. 2010).  A policy is ambiguous when it is "susceptible to two or more reasonable interpretations."  *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).  But an ambiguity does not exist "simply because the parties interpret a policy differently."  *Gilbert*, 327 S.W.3d at 133.  Indeed, if a contract can be given a clear and definite meaning, it is not ambiguous as a matter of law.  *Id.* And so, when an exclusion is clear and unambiguous, the Court interprets it according to its plain meaning, and gives no deference to the insured's interpretation.  *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (applying Texas law).  For these reasons, cases involving the interpretation of insurance policies are particularly appropriate for summary judgment. *Gonzalez v. Denning*, 394 F.3d 388, 395 (5th Cir. 2004) (applying Texas law).

## II.   **Cinemark's Contractual Claims**

Cinemark's contractual claims hinge entirely on whether it can establish a loss that is covered by the Policies.  As an initial matter, neither party seriously contends that the Policies are

ambiguous.[6]  Moreover, the parties agree that the key issue for determining coverage is whether Cinemark can carry its burden of establishing that it suffered "physical loss or damage" to its properties within the meaning of the Policies (Dkt. #152 at p. 29; Dkt. #154 at p. 8).  The Court concludes that it cannot.

The Policies do not define "physical loss or damage."  But, in the context of COVID-19 related coverage, the Fifth Circuit has held that the ordinary and generally accepted meaning of "physical loss" requires a "tangible alteration or deprivation of property."  *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458 (5th Cir. 2022) (applying Texas law). Specifically, the Fifth Circuit found that, under Texas law, the adjective "physical" requires a "tangible" alteration to the insured property.  *Id.* (citing *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 24 (Tex. 2015)).  Although the Fifth Circuit has not yet defined "physical damage," courts have relied on the definition of "physical" used in *Terry Black's* to conclude that the ordinary and generally accepted meaning of "physical damage" requires a tangible harm to the insured property.  *LNY 5003 LLC v. Zurich Am. Ins. Co.*, No. 4:20-CV-2992, 2022 WL 4543196, at *3 (S.D. Tex. Sept. 28, 2022) (citing *Terry Black's*, 22 F.4th at 458).

Cinemark contends that the presence of COVID-19 on its properties qualifies as "physical loss or damage" (Dkt. #162 at p. 30).  According to Cinemark, it has produced scientific evidence

---

[6] Although Cinemark does not contend that the Policies are ambiguous, it does attempt to inject additional language into the Policies through extrinsic evidence.  Specifically, Cinemark relies on evidence of Factory Mutual's internal coding system to support its contention that the Policies cover the peril of "Communicable Disease," which Cinemark defines as a peril that "results from the actual presence of a communicable disease and the associated business interruption as defined in the policy" (Dkt. #154 at pp. 6–7).  But this definition does not appear anywhere in the Policies.  Rather, the Policies explicitly define a communicable disease as a disease "which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges" or "Legionellosis" (Dkt. #152 at p. 82).  Because "communicable disease" is explicitly defined in the Policies, that definition controls here.  *E. Concrete Materials*, 948 F.3d at 300.  Therefore, the Court will not consider the extrinsic evidence cited by Cinemark.  *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011) (noting that parties may not rely on extrinsic evidence to "create an ambiguity or to give the contract a different meaning from that which its language imports.") (internal quotations omitted).

showing that COVID-19 permeated the air in its properties and transformed its "surfaces into fomites when aerosols and droplets containing SARS-CoV-2 landed on them" (Dkt. #162 at p. 30).

Simply put, the harm claimed by Cinemark does not meet the definition of "physical loss or damage" required under the Policies because COVID-19 does not tangibly alter, harm, or deprive Cinemark of its property. *See Terry Black's*, 22 F.4th at 458.  In interpreting similar—if not identical—policy language, courts in the Fifth Circuit have uniformly held that COVID-19 and "COVID-19 related issues" do not cause "physical loss or damage" to property. *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 843 (5th Cir. 2023) (holding that "the existence of coronavirus particles in or on surfaces in a covered facility" does not meet the definition of "physical loss or damage"); *Aggie Investments, L.L.C. v. Cont'l Cas. Co.*, No. 21-40382, 2022 WL 257439, at *3 (5th Cir. Jan. 26, 2022); *Lamacar Inc. v. Cincinnati Cas. Co.*, No. 3:21-CV-1396, 2022 WL 227162, at *5 (N.D. Tex. Jan. 26, 2022) (collecting cases); *Univ. of St. Thomas v. Am. Home Assurance Co.*, 4:20-CV-02809, 2021 WL 3129330, at *5 (S.D. Tex. July 23, 2021) ("Even taking as true [the insured's] allegation that the virus was present on its campus . . . the court concludes that it does not constitute a direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated") (quotations omitted).

Underlying these cases is the understanding that, although COVID-19 poses a risk to individuals, it is ultimately a transitory virus that poses no long-term risk to inanimate property. Put differently, "[w]hile COVID-19 has wrought great physical harm to people, it does not physically damage property within the plain meaning of 'physical.'" *Ferrer & Poirot, GP v. Cincinnati Ins. Co.*, 36 F.4th 656, 658 (5th Cir. 2022) (per curiam) (applying Texas law).  It is for this reason that the Fifth Circuit has repeatedly rejected claims for business interruption caused by COVID-19 both when the insured's alleged harm is caused by government-ordered closures *and*

when the insured claims that COVID-19 actually entered its property and contaminated the property's surfaces. *Terry Black's*, 22 F.4th at 458 (holding that government restrictions on dine-in services did not cause "physical loss or damage"); *PHI Grp.*, 58 F.4th at 843 (holding that the presence of COVID-19 particles in the air and on surfaces does not cause "physical loss or damage"); *PS Bus. Mgmt., L.L.C. v. Fireman's Fund Ins. Co.*, No. 21-30723, 2022 WL 2462065, at *3 (5th Cir. July 6, 2022) (holding that COVID-19 particles did not cause "direct physical loss or damage" because "COVID-19 is a virus that injures people, not property").

More broadly, courts around the country have categorically rejected the notion that even the confirmed presence of COVID-19 particles in an insured property causes "physical loss or damage." *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1020 (7th Cir. 2022) (rejecting argument that the presence of COVID-19 particles constitutes physical alteration of property); *Dukes Clothing, LLC v. Cincinnati Ins. Co.*, 35 F.4th 1322, 1327–28 (11th Cir. 2022) (same); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 27 F.4th 398, 403 (6th Cir. 2022) (same).[7]

In the face of this overwhelming body of caselaw, Cinemark contends that this case is unique, both because of the factual record before the Court and because the language of the Policies allows for "physical loss of damage" caused by communicable diseases like COVID-19.  The Court finds these arguments to be unavailing.

---

[7] As Factory Mutual points out, every federal appellate court to consider this issue has concluded that, as a matter of law, COVID-19 and COVID-19 related issues do not qualify as "physical loss or damage" to property. *SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 36 F.4th 23, 27–28 (1st Cir. 2022); *ITT Inc. v. Factory Mut. Ins. Co.*, No. 22-1245, 2023 WL 1126772, at *2 (2d Cir. Jan. 31, 2023); *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 147–48 (3d Cir. 2023); *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, No. 21-2055, 2022 WL 1114373, at *1 (4th Cir. Apr. 14, 2022), *cert. denied sub nom. The Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, 143 S. Ct. 528 (2022); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021); *Stant USA Corp. v. Factory Mut. Ins. Co.*, __ F.4th__, No. 22-1336, 2023 WL 2326096, at *3–*4 (7th Cir. Mar. 2, 2023); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144–45 (8th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021); *Goodwill Indus. of Cent. Okla., Inc. v. Phil. Indem. Ins. Co.*, 21 F.4th 704, 710–12 (10th Cir. 2021), *cert. denied*, 213 L. Ed. 2d 1017, 142 S. Ct. 2779 (2022); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, 35 F.4th 1318, 1321 (11th Cir. 2022).

Cinemark argues that this case is different because "the undisputed scientific" evidence in the record establishes that COVID-19 particles entered Cinemark's properties and transformed its surfaces into infectious fomites, thereby causing "physical damage" (Dkt. #154 at pp. 25–26). Cinemark also argues that the intrusion of these COVID-19 particles caused "physical loss" because it tangibly altered the surfaces and air in Cinemark's properties (Dkt. #154 at p. 27). But, even when viewed in the light most favorable to Cinemark, these facts do not satisfy the legal definition of "physical loss or damage" set out by the Fifth Circuit.

Contrary to Cinemark's contentions, the Fifth Circuit has already rejected the notion that the presence of COVID-19 itself causes "physical loss or damage" to property. *PS Bus. Mgmt.*, 2022 WL 2462065, at *3; *Ferrer & Poirot*, 36 F.4th at 648. In *PS Business Management*, the insured alleged that its property was damaged when COVID-19 contaminated its property and caused it to lose "valuable merchandise, business records, and the property of certain clients . . . ." 2022 WL 2462065, at *3. The Fifth Circuit concluded that, even taking these allegations as true, the Plaintiff had failed to explain how this property could be "lost" due to COVID-19 because COVID-19 is "a virus that injures people not property." *Id.* (cleaned up). And, in *Ferrer & Poirot*, the Fifth Circuit rejected the insured's contention that COVID-19 entered its property and caused physical loss or damage, concluding that COVID-19 does not cause physical loss or damage "within the plain meaning of physical." 36 F.4th at 648.

That same rationale applies here. Although the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself. After all, COVID-19 does not cause tangible alteration or harm to property—it causes people to get sick. *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 800 (S.D. Tex. 2021). Thus, the Court concludes that Cinemark's contention that the presence of COVID-19

fomites in its properties caused "physical loss or damage" within the meaning of the Policies fails as a matter of law.  To hold otherwise would "render every sneeze, cough, or exhale" a tangible alteration or deprivation of property.  *Am. Liberty Hosp., Inc. v. Cont'l Cas. Co.*, No. 4:22-CV-01135, 2022 WL 2669465, at *2 (S.D. Tex. July 11, 2022).

The problems posed by Cinemark's coverage theory are also evidenced by its argument that it conducted "repairs" to remedy the physical loss and damage wrought by COVID-19 (Dkt. #162 at p. 37).  According to Cinemark, as part of its "Cinemark Standard," it installed plexiglass shields, air purifiers, cleaning carts, and improved air filtration systems (Dkt. #162 at p. 37).  But these are not repairs intended to replace or remedy damaged property—they are mitigation efforts intended to protect people.  Indeed, as other courts have noted when faced with similar arguments, COVID-19 "damages humans, not physical structures," and the fact that an insured installed hand sanitizing stations, plexiglass shields, and an improved HVAC system "does not change this reality."  *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, 588 F. Supp. 3d 266, 280 (D. Conn. 2022).  Ultimately, "hand sanitizing stations, plexiglass shields, COVID-related signage and an enhanced HVAC system are not there to replace or repair damage to the property, they are there to protect humans."  *Id.*; *Brown Jug, Inc.*, 27 F.4th at 404 ("This outbreak purportedly 'damaged' the property, because [the insured] had to take remediation measures, such as cleaning and reconfiguring spaces, to reduce the threat of COVID-19. These, however, are precisely the sorts of losses we have previously determined are not tangible, physical losses, but economic losses.").

Cinemark's invocation of the "intrusion theory" is similarly flawed.  Cinemark likens this case to those in which courts have held that "dangerous agents" like mold, asbestos, or noxious fumes have intruded into property, rendering it unusable and causing "physical loss" (Dkt. #154

15

at p. 27 (citing *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 723 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).   But in those cases, the key factor was the substance's ability to cause long-lasting change to the physical character of the property itself.   *See, e.g.*, *Carilion Clinic v. Am. Guarantee & Liab. Ins. Co.*, 583 F. Supp. 3d 715, 731 (W.D. Va. 2022) ("Whether it be methamphetamine, gasoline, ammonia, or asbestos contamination, a rock fall or failed drainpipe, there was some physical loss associated with the insured property itself.").   In contrast, there is no dispute that COVID-19 particles do not cause long-lasting change to the physical character of any property, and courts around the country uniformly refused to treat COVID-19 as a "dangerous agent" comparable to mold or asbestos for that reason.   *Id.*; *George Washington Univ. v. Factory Mut. Ins. Co.*, __ F.3d __, No. 21-CV-3006, 2022 WL 4078942, at *4 (D.D.C. Sept. 6, 2022) ("While COVID-19 poses a serious risk to humans, it does not threaten the integrity of physical structures.  Cases involving harmful gases, fumes, and odors provide no reason to abandon the conclusion compelled by text and precedent: 'physical loss or damage' requires a tangible alteration.").

Cinemark also argues that the Policies are "materially different" from any other policy addressed by the Fifth Circuit because they "expressly acknowledge that a virus can cause physical loss or damage" (Dkt. #154 at p. 28).  In making this argument, Cinemark relies heavily on the Court's prior order denying Factory Mutual's motion for judgment on the pleadings, which it cites for the proposition that the Court has "expressly acknowledged that a virus can cause physical loss or damage" (Dkt. #154 at p. 28 (citing *Cinemark Holdings v. Factory Mutual Ins. Co.*, 500 F. Supp. 3d 565, 569 (E.D. Tex. 2021) ("*Cinemark I*")).

But, for several reasons, *Cinemark I* cannot bear the weight that Cinemark gives it here. First, the Court denied Cinemark's motion for judgment on the pleadings before the Fifth Circuit

defined "physical loss" in the context of COVID-19.  *See Terry Black's*, 22 F.4th at 458.  Indeed, the Court decided *Cinemark I* over a year before the Fifth Circuit provided any guidance on the impact of COVID-19 on commercial insurance claims.  Since that time, the Fifth Circuit has consistently rejected the notion that COVID-19 causes "physical loss or damage" to property. *Ferrer & Poirot*, 36 F.4th at 658.

Second, the critical factor in the Court's denial of Factory Mutual's motion for judgment on the pleadings was the fact that Cinemark alleged that COVID-19 entered its property and caused damage, whereas other cases decided at that time involved claims for losses stemming from governmental orders.  *Cinemark I*, 500 F. Supp. 3d at 569 (distinguishing *Selery Fulfillment, Inc. v. Colony Ins. Co.*, 525 F. Supp. 3d 771 (E.D. Tex. 2021)).  But, again, the Fifth Circuit has since made clear that there is no "physical loss or damage" *even if* COVID-19 is present in a covered property.  *PHI Grp.*, 58 F.4th at 843; *Ferrer & Poirot*, 36 F.4th at 648 (emphasis added).

And finally, contrary to Cinemark's contentions, the Court has never held that the Policies "expressly acknowledge that a virus can cause physical loss or damage" (Dkt. #154 at p. 28). Rather, the Court merely noted that the Policies excluded "loss or damage caused by or resulting from terrorism" from the Interruption by Communicable Disease coverage.  *Cinemark I*, 500 F. Supp. 3d at 567.  At most, this is an acknowledgement that a communicable disease *could* cause some type of loss or damage.  That said, the Fifth Circuit has clarified that COVID-19 does not cause "physical loss or damage" as required by the Policies.  *PHI Grp.*, 58 F.4th at 843.

Moreover, Cinemark's reliance on the terrorism language in the Interruption by Communicable Disease extension is generally misplaced.  As the Maryland Supreme Court recently concluded while interpreting an identical policy, that language does not expand coverage or otherwise establish that communicable diseases like COVID-19 can cause "physical loss or

damage." *Tapestry, Inc. v. Factory Mut. Ins. Co.*, 286 A.3d 1044, 1058 n.18 (Md. 2022).  Notably, the reference to loss or damage in the terrorism language does not contain the modifier "physical" (Dkt. #152, Exhibit 1 at p. 69).  And, as the court noted in *Tapestry*, the "loss or damage" language in the terrorism exclusion is best viewed as a "a shorthand restatement" of the broadly worded exclusion for terrorism found elsewhere in the Policies, rather than a separate exclusion that is uniquely tailored to the Interruption by Communicable Disease extension and somehow intended to expand coverage under the Policies.  *Tapestry*, 286 A.3d at 1058 n.18.[8]

In context, the Communicable Disease Response and Interruption by Communicable Disease provisions undermine Cinemark's contention that the Policies "acknowledge" that a communicable disease can cause "physical loss or damage."  Both of the Communicable Disease provisions are unique among the grants of coverage found in the Policies in that they do not require "physical loss or damage" as a prerequisite for coverage (Dkt. #152, Exhibit 1 at pp. 34–35; 69–70).  Given this lower threshold for coverage, the Communicable Disease coverages are subject to sublimits on liability that are significantly smaller than the overall per occurrence limit under the Policies (Dkt. #152, Exhibit 1 at p. 12).  This juxtaposition indicates that the drafters of the Policies contemplated that communicable diseases like COVID-19 could impact business operations without causing "physical loss or damage" and added the Communicable Disease coverages accordingly.  If, as Cinemark contends, the Policies already contemplate that communicable diseases can cause "physical loss or damage," the Communicable Disease provisions would be unnecessary and repetitive.  This cannot be.  *Claimant ID 100218776 v. BP Expl. & Prod., Inc.*,

---

[8] The Court is unaware of any other court interpreting the terrorism language in Factory Mutual's policies to mean that a communicable disease can cause "physical loss or damage."  Instead, courts interpreting Factory Mutual policies with language that is identical to the language before the Court have routinely held that COVID-19 does not cause "physical loss or damage" to property.  *See, e.g.*, *Stant USA Corp.*, 2023 WL 2326096, at *3; *Froedtert Health Inc. v. Factory Mut. Ins. Co.*, __F.3d__, 2:21-CV-00713, 2022 WL 3213270, at *5 (E.D. Wis. Aug. 9, 2022).

712 F. App'x 372, 375 (5th Cir. 2017) ("It is axiomatic that, to the extent possible, a court should interpret all the terms in a contract without rendering any of them meaningless or superfluous.") (internal quotations omitted).

In sum, there is nothing unique or ambiguous about the Policies that prevents the Court from interpreting them as a matter of law.  Thus, the question before the Court is a simple one: Does the presence of COVID-19 particles, including contagious aerosols and fomites, on Cinemark's properties constitute "physical loss or damage" within the meaning of the Policies? The ordinary and generally accepted meaning of "physical loss or damage" and the weight of binding precedent compel the same answer to this question—COVID-19 is a virus that has a profound effect on people, but it does not cause "physical harm or damage" to property as a matter of both law and common sense.  *See, e.g.*, *Ferrer & Poirot*, 36 F.4th at 648.

Accordingly, Cinemark is not entitled to coverage under the Policies and its contractual claims necessarily fail as a matter of law.[9]

## III.    Cinemark's Extra-Contractual Claims

Cinemark also asserts extra-contractual claims for breach of the implied covenant of good faith and fair dealing and violations of the Texas Insurance Code (Dkt. #59 ¶¶ 312–34).  In Texas, the general rule is that there can be no claim for bad faith when an insurer denies a claim that is, in fact, not covered.  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018).  This means that an insured cannot recover damages for a common law bad faith claim or statutory violation if it "had no right to receive benefits under the policy and sustained no injury independent of a right to benefits."  *Id.* at 500.

---

[9] Because Cinemark has not established that it is entitled to coverage under the Policies, the Court need not consider Factory Mutual's argument that any exclusions apply here.  *Terry Black's*, 422 F.4th at 455.

For an insured to recover on a bad faith insurance claim when the insurer has properly denied coverage for the claim, the insured must demonstrate that it has suffered an injury "independent of the policy claim." *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).   But this independent-injury rule applies only if the insured's damages are "truly independent" of its alleged right to receive policy benefits. *Menchaca*, 545 S.W.3d at 500.  It does not apply when the insured's extra-contractual claims are predicated on coverage under the policy or if the damages "flow or stem" from the denial of the insured's claim. *Id.*  It is exceedingly rare that an insured can succeed under the independent-injury theory—in fact, the Supreme Court of Texas has "yet to encounter one." *Id.*; *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 522 (5th Cir. 2013) (noting that "no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party claim context").

Cinemark's claimed losses are not covered by the Policies, so it can only sustain its extra-contractual claims if this case presents the exceedingly rare situation in which the independent-injury rule applies.  It does not.  Cinemark argues that its statutory claims are based on Factory Mutual's alleged refusal to investigate Cinemark's claim, and that an insurer's refusal to investigate "may be bad faith even when there is no coverage" (Dkt. #162 at p. 52).  But Cinemark makes no attempt to explain how the damages caused by Factory Mutual's alleged failure to investigate its claims do not "flow" or "stem" from its claim to coverage under the Policies.  In fact, Cinemark can point to no injury caused by Factory Mutual that is "independent from the loss of the [Policies'] benefits." *See Menchaca*, 545 S.W.3d at 500.  For this reason, Cinemark's extra-contractual claims fail as a matter of law. *See Terry Black's*, 514 F.3d at 910 (dismissing

extracontractual claims after finding that COVID-19 could not cause "physical loss"); *Lamacar*, 2022 WL 227162, at *5 (same).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #152) is hereby **GRANTED** and that Plaintiffs' Motion for Partial Summary Judgment (Dkt. #154) is hereby **DENIED**.

It is further **ORDERED** that Plaintiffs' claims against Defendant Factory Mutual Insurance Company are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

 **SIGNED this 21st day of March, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE