# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| CINEMARK HOLDINGS, INC., et al., § <br> § <br> *Plaintiffs,* § <br> § <br> v. § <br> § <br> FACTORY MUTUAL INSURANCE § <br> COMPANY, § <br> § <br> *Defendant.* § | Civil Action No. 4:21-CV-00011 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Factory Mutual Insurance Company's Motion for Costs (Dkt. #212). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part**.

## BACKGROUND

This case involves a coverage dispute over the applicability of an "all risk" insurance policy to business interruption losses stemming from the COVID-19 pandemic. The Court incorporates the background as explained in its prior Memorandum Opinion and Order (Dkt. #208 at pp. 1–7). However the Court highlights the facts below of particular relevance to this Order.

Plaintiffs Cinemark Holding, Inc., Cinemark USA, Inc., CNMK Texas Properties LLC, Century Theaters, Inc., Cinemark Partners II, Ltd., Greeley, Ltd., and Laredo Theatre, Ltd. (collectively, "Cinemark") brought this case for claims stemming from two different insurance policies issued by defendant Factory Mutual Insurance Company ("Factory Mutual"): Policy No. 1051832 which provided Cinemark with coverage from April 30, 2019 to April 30, 2020 (the "2019–20 Policy") and Policy No. 1066496 which provided Cinemark with coverage from April

30, 2020 to April 30, 2021 (the "2020–21 Policy") (collectively, the "Policies") (Dkt. #208 at pp. 1–2). Both Policies included the following coverage additions and extensions: "Communicable Disease Response" coverage and "Interruption by Communicable Disease" coverage (collectively, the "Extensions") (Dkt. #208 at pp. 3-4). The Extensions provided a $1 million annual aggregate sublimit of liability under the 2019–20 Policy and a $10,000 annual aggregate sublimit of liability under the 2020–21 Policy (Dkt. #208 at p. 5).

On April 20, 2020, prior to filing suit, Cinemark submitted a notice of loss under the 2019–20 Policy. The parties exchanged correspondence regarding the notice of loss over the following months, including a May 18, 2020 letter where Factory Mutual "request[ed] information about the presence of COVID-19 on Cinemark's properties, including any information regarding employees who tested positive for COVID-19" (Dkt. #208 at p. 5).

On November 18, 2020, Cinemark filed suit in the 471st District Court in Collin County, Texas for claims under the 2019–20 Policy (Dkt. #1). At that point, Factory Mutual had not yet paid Cinemark for any losses incurred due to COVID-19. On June 3, 2021, Cinemark amended its Complaint to add claims under the 2020–21 Policy (Dkt. #59; Dkt. #154 at p. 23). Then, on October 13, 2021, counsel for Cinemark sent a letter to counsel for Factory Mutual regarding the 2019–20 Policy "[t]o facilitate [Factory Mutual's] prompt payment of Cinemark's Communicable Disease limits, independent of other coverages and matters at issue in the litigation" (Dkt. #152, Exhibit 11 at p. 3). On November 12, 2021, Factory Mutual acknowledged receipt of the information enclosed in that letter and informed Cinemark it would cover losses subject to the $1 million annual aggregate sublimit of liability (*see* Dkt. #152, Exhibit 12 at p. 4). On November 18, 2021, Factory Mutual paid Cinemark the $1 million under the 2019–20 Policy (Dkt. #214, Exhibit 2 at pp. 2-4).

On March 21, 2022, Factory Mutual informed Cinemark it had opened a claim under the 2021–21 Policy because "[d]uring the discovery process for the litigation concerning [the 2019–20 Policy], Cinemark produced information that supports an insured loss under [the 2020–21 Policy]" and informed Cinemark it would cover losses under the Extensions subject to the $10,000 annual aggregate sublimit of liability (Dkt. #152, Exhibit 13 at p. 2). On March 24, 2022, Factory Mutual paid Cinemark the $10,000 under the 2020–21 Policy (Dkt. #214, Exhibit 3 at pp. 2–4).

On October 13, 2022, both parties brought motions for summary judgment (Dkt. #152; Dkt. #154). On March 21, 2023, the Court granted Factory Mutual's motion for summary judgment and denied Cinemark's motion for summary judgment (Dkt. #208). On April 4, 2023, following the entry of Final Judgment, Factory Mutual filed its Motion for Costs (Dkt. #212). On April 18, 2023, Cinemark responded (Dkt. #214). On April 25, 2023, Factory Mutual replied (Dkt. #216). On May 2, 2023, Cinemark filed its sur-reply (Dkt. #218).

## LEGAL STANDARD

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1).

The Court may tax the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2018).

The Fifth Circuit has explained that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). The denial of costs is considered "in the nature of a penalty," so the Court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so." *Schwarz*, 767 F.2d at 131. "The burden is on the party seeking an award of costs to show entitlement to an award." *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015).

The Court has discretion to deny costs when the "suit was brought in good faith *and* denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (4th ed. 1998).

## ANALYSIS

### I.   The Prevailing Party

The parties first contest whether Factory Mutual is a "prevailing party" as required by Federal Rule of Civil Procedure 54(d). Factory Mutual believes it is the prevailing party, and thus entitled to its costs, because "the Court granted its Motion for Summary Judgment and dismissed the case with prejudice" (Dkt. #212 at p. 2). Cinemark, on the other hand, believes Factory Mutual

4

is not the prevailing party because "Cinemark prevailed on some of its claims, . . . and Cinemark's other claims, when brought, were the subject of unsettled Texas law" (Dkt. #214 at p. 6).

"'Prevailing party' is a legal term of art and defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-CV-358, 2022 WL 3008501, at *10 (E.D. Tex. July 28, 2022) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)) [hereinafter *Gibson I*]. In order to be considered a prevailing party, the party "must achieve some judicially sanctioned relief that either creates or materially alters a legal relationship between the parties." *Jordan Kahn Music Co., LLC v. Taglioli*, No. 4:21-cv-00045, 2023 WL 2266123, at *8 (E.D. Tex. Feb. 28, 2023) (quoting *Buckhannon*, 532 U.S. at 604). "[T]he Fifth Circuit has stated that '[a] prevailing party is "one who has been awarded . . . at least some relief on the merits" and there must be a "judicial *imprimatur* on the change" in the legal relationship between the parties.'" *Id.* (quoting *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021)). "When deciding who is the prevailing party, 'the case must be viewed as a whole,' and a party need not prevail on every issue in order to recover costs." *Id.* (quoting *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991)).

The posture of the case slightly complicates the determination of the prevailing party. As noted in the Court's summary judgment order, Cinemark brought claims for coverage under some policies that did require "physical loss or damage" to property, and it brought claims for coverage under some policies that did not, i.e. the Extensions (Dkt. #208 at pp. 5–6). Cinemark's claims for coverage under the Extensions were resolved when Factory Mutual paid Cinemark "the full limits of liability available" under those policies (Dkt. #208 at p. 5). So at the time of summary judgment,

5

the only claims left in the case were those for policies that required "physical loss or damage" (Dkt. #208 at p. 6).

The parties dispute how the Court should interpret Factory Mutual's payments to Cinemark under the Extensions. Cinemark contends that it "prevailed" on its claims under the Extensions since "Cinemark recovered more than $1 million by settlement" (Dkt. #214 at p. 7). Factory Mutual contests this characterization, stating it paid Cinemark the available amount under those claims once it "received the necessary claim support during the litigation" (Dkt. #216 at p. 2). Factory Mutual asserts that Cinemark "confuses obtaining payment *during* the litigation with payment *because of* the litigation" (Dkt. #216 at p. 2). In reply, Cinemark continues to depict Factory Mutual's payments as payments made "[a]s a result of the lawsuit" (Dkt. #218 at p. 3), and it indicates to the Court that it believes Factory Mutual cannot be considered a "prevailing party" because "Cinemark obtained the relief it sought in litigation" regardless of whether the relief was granted by the Court (Dkt. #218 at pp. 3–4).

After consideration, the Court finds that Factory Mutual is the prevailing party. When viewing the case as a whole, Factory Mutual is the prevailing party because the Court found Cinemark's contractual claims failed as a matter of law (Dkt. #208 at p. 19) and Cinemark's extra-contractual claims failed as a matter of law (Dkt. #208 at p. 20). In that way, the Court granted Factory Mutual "at least some relief on the merits" and put its "'judicial *imprimatur* on the change' in the legal relationship between the parties." *Jordan Kahn*, 2023 WL 2266123, at *8 (quoting *Veasey*, 13 F.4th at 368).

The Court disagrees with Cinemark's description of Factory Mutual's payments pursuant to the Extensions as a "settlement." Those payments were made, as Factory Mutual stated,

6

"directly to Cinemark on an open insurance claim, not as a legal settlement or judgment" (Dkt. #216 at p. 3). But even if the Court did view those payments as a "settlement," that would present the Court with a "mixed-results situation" in which Court can "simply align the parties and decide which side, if any, prevailed on the case as a whole." *Jordan Kahn*, 2023 WL 2266123, at *9. Even if the Court considered this a mixed-results situation, the Court would still view Factory Mutual as the prevailing party since it prevailed in the case as a whole.

II.     **Date from When Costs are Entitled**

The parties debate from when Factory Mutual should be entitled to its costs. Cinemark believes Factory Mutual's costs should be limited to any incurred after June 9, 2022, the date of the Fifth Circuit's decision in *Ferrer & Poirot, GP v. Cincinnati Insurance Company* (Dkt. #214 at p. 9). Factory Mutual believes it is entitled to the entirety of its costs, not just those incurred after *Ferrer & Poirot* (*see* Dkt. #216 at pp. 3–4).

The Court finds Factory Mutual can recover costs from the entire duration of the litigation. "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco*, 448 F.3d at 793. The denial of costs to a prevailing party is "in the nature of a penalty." *Id.* at 794. And while some courts have denied costs when "close and difficult legal issues [are] presented," *id.*, the Court declines to do so in this case. While this case did involve novel issues of law at the outset, "which weighs in [the non-prevailing party's] favor, it does not outweigh the presumption" that the prevailing party will be awarded costs. *Celanese Corp. v. Kellogg, Brown & Root, Inc.*, No. H–06–2265, 2009 WL 1810967, at *1 (S.D. Tex. June 25, 2009). The Court also recognizes the wide body of case law that uniformly decides "a 'physical loss of property' to require a tangible alteration or deprivation of property." *Terry Black's Barbecue, L.L.C. v. State*

7

*Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (citing cases). And finally, the Court did not find the Policies so "unique or ambiguous" that it could not interpret them as a matter of law at the summary judgment stage (Dkt. #208 at p. 19). So the Court will consider costs from the entire period of litigation, not just from after the Fifth Circuit's decision in *Ferrer & Poirot*.

### III.    Specific Objections to Fees

#### A.    Costs Associated with Depositions

"Video depositions and written deposition transcripts are taxable costs under § 1920(2) so long as they are 'necessarily obtained for use' in a case." *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-cv-00358, 2023 WL 2899050, at *4 (E.D. Tex. Apr. 11, 2023) (citing 28 U.S.C. § 1920(2)) [hereinafter *Gibson II*]. "Costs related to deposition transcripts are necessarily obtained if, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Id.* (citations omitted).

Cinemark objects the following types of costs arising from depositions: (1) the deposition transcripts of Factory Mutual's witnesses, (2) the video depositions of both Factory Mutual's and Cinemark's witnesses, and (3) other miscellaneous costs associated with depositions.

#### 1.    Deposition Transcripts of Factory Mutual's Witnesses

Cinemark contests the award of costs for deposition transcripts of the following witnesses because they were Factory Mutual's own witnesses: Doug Backes, John Baker, Saritha Bangara, Jeff Casillas, Gene Del Vecchio, Peter Hagen, Richard Judd, Patricia Martinez, Sarah Nordman, Mark Roberts, Diana Toubman, Thomas Veitch, Mark Wakefield, and Jason Wing (Dkt. #214 at pp. 12–13). Factory Mutual claims it can recover costs for the deposition transcripts of all its

witnesses because "Cinemark noticed [the depositions of] all of [Factory Mutual's] witnesses" (Dkt. #216 at p. 5).

As a general rule, "a party isn't entitled to recover costs 'for a copy of the deposition of a witness whom the party may call as its witness at trial.'" *Love v. Univ. of Saint Thomas*, No. 4:20-CV-00176, 2023 WL 9184569, at *2 (S.D. Tex. Sept. 28, 2023) (quoting *Liberty Mut. Ins. Co. v. Gardere & Wynne*, No. 3–95–CV–1330–L, 2004 WL 691229, at *1 (N.D. Tex. Mar. 29, 2004)). But while that is the general rule, "[p]revailing parties are not *prohibited* from recovering costs associated with depositions of their own witnesses." *Romo v. Waste Connections U.S., Inc.*, No. 3:18-CV-00570-D, 2020 WL 13607874, at *2 (N.D. Tex. Mar. 6, 2020) (emphasis added). For example, "courts do allow costs of depositions of a party's own witnesses if the opposing party noticed and took the deposition." *Nall v. BNSF Ry. Co.*, No. 4:14-CV-02819, 2017 WL 3887234, at *2 (S.D. Tex. Sept. 6, 2017). "Courts also award costs when the deposition testimony 'is used to support the party's motion for summary judgment.'" *Love*, 2023 WL 9184569, at *2 (quoting *Liberty Mut.*, 2004 WL 691229, at *1). Courts also have recognized it could be reasonable for a prevailing party to expect copies of the prevailing party's witnesses' depositions would be used in preparation for trial when the prevailing party's witnesses were "identified . . . as potential fact witnesses in [the non-prevailing party's] Initial Disclosures." *Romo*, 2020 WL 13607874, at *2. "In short, prevailing parties are entitled to recover costs of original depositions and copies 'provided they were "necessarily obtained for use in the case."'" *Love*, 2023 WL 9184569, at *2 (quoting *Fogleman*, 920 F.2d at 285).

The Court finds Factory Mutual can recover the costs of deposition transcripts of its own witnesses. Of the fourteen individuals identified by Cinemark as Factory Mutual's own witnesses,

9

Cinemark included nine of them in its Initial Disclosures as individuals likely to have information that Cinemark might use to support its claims or defenses: Backes, Baker, Casillas, Judd, Martinez, Nordman, Toubman, Wakefield, and Wing (Dkt. #212, Exhibit 5 at pp. 4–5). Because of that, "it was reasonable to expect that their depositions or copies of their depositions would be used in preparation for trial." *Romo*, 2020 WL 13607874, at *2. The remaining five individuals identified by Cinemark as Factory Mutual's own witnesses are all experts retained by Factory Mutual (*see* Dkt. ##94–95, 99–101). The Court finds that once Cinemark "determined it was necessary to depose [Factory Mutual's] expert[s], [Factory Mutual] was justified in obtaining [] transcript[s] of th[ose] deposition[s]." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Intern. Union v. Trimas Corp.*, No. 1:06-CV-32-TS, 2007 WL 1295820, at *2 (N.D. Ind. Apr. 30, 2007). "That fact that the deposition[s] did not prove to be absolutely indispensable when [Factory Mutual] did not cite to it on summary judgment does not render the cost unnecessary." *Id.* So the Court will not reduce Factory Mutual's requested costs for requesting deposition transcripts of its own witnesses.

### 2. Costs of Video Depositions

Cinemark contests the award of costs to Factory Mutual for video depositions of Cinemark's witnesses, Factory Mutual's witnesses, and the parties' experts (Dkt. #214 at p. 10). Cinemark contests video deposition costs for certain of its witnesses because "[m]ore than half of the witnesses for whom [Factory Mutual] seeks to recover costs reside in Texas, within 100 miles of the Court, and thus would have been available for trial" (Dkt. #214 at p. 10 (citing FED. R. CIV. P. 45(c)(1)(A)).

As the Court has noted previously, "courts within the Fifth Circuit are split on whether § [1920(2)] permits the recovery of costs for preparing both a printed deposition transcript and a videotaped deposition for the same witness." *Gibson II*, 2023 WL 2899050, at *4–5 (collecting cases). In some instances, the prevailing party may recover video deposition costs of witnesses "under [its] own control and [who] were expected to give live testimony during trial" if it can demonstrate that it "utilized the videotaped deposition during the progression of the case, or during trial." *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *20 (E.D. Tex. May 12, 2016). Ultimately, to recover the costs of *both* printed depositions transcripts and video depositions, the prevailing party must "show that the video was necessarily obtained for use in the case." *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-00800-WCB, 2015 WL 4776501, at *5 (E.D. Tex. Aug. 13, 2015).

With respect to the videos of Factory Mutual's fact witnesses[1], the Court finds Factory Mutual has met its burden to demonstrate those video depositions were necessarily obtained for use in the case. Because these "video depositions were not used at trial, [and] the Court disposed of the case on summary judgment motions," Factory Mutual needs to demonstrate that there was a "reasonable expectation that the deposition[s] may [have] be[en] used for trial preparation" to recover those costs. *Kroy IP*, 2015 WL 4776501, at *5. Factory Mutual met that burden for its fact witnesses by pointing to Cinemark's video deposition designations of those fact witnesses that Cinemark filed with the Court (*see* Dkt. #212 at pp. 6–7 (citing Dkt. #200)). Cinemark's video deposition designations, accompanied by Factory Mutual's objections and counter-designations, demonstrate that Factory Mutual did in fact "utilize the videotaped deposition[s] during the

---

[1] Cinemark specifically objects to the video depositions of Factory Mutual's fact witnesses Doug Backes, Jeff Casillas, Richard Judd, Diana Toubman, and Jason Wing (Dkt. #214 at pp. 11–13).

11

progression of the case, . . . and thus, . . . the videotape depositions were [] necessarily obtained for use in the case." *Traxxas*, 2016 WL 2758183, at *20. So Factory Mutual may recover video deposition costs for those witnesses.

With respect to the video of Gene Del Vecchio, one of Factory Mutual's expert witnesses, the Court finds Factory Mutual has not met its burden to demonstrate that video deposition was necessarily obtained for use in the case. Cinemark specifically objected to this video deposition cost (Dkt. #214 at p. 12). While, as previously noted, Factory Mutual demonstrated to the Court an instance where it used the video depositions of its fact witnesses, it did not demonstrate where it used Del Vecchio's video deposition. And the Court already found Factory Mutual is entitled to the cost for Del Vecchio's printed deposition transcript (*see supra* III.A.1). Because Factory Mutual did not demonstrate how it used the video deposition specifically and not the deposition transcript, the Court finds Factory Mutual did not meet its burden with respect to Gene Del Vecchio's video transcript and will only allow the printed transcript award.

With respect to the videos of Cinemark's witnesses[2], the Court finds Factory Mutual has not met its burden to demonstrate that video deposition was necessarily obtained for use in this case. Factory Mutual requests video costs for "Cinemark corporate representatives, executives, and employees," but it does not specifically mention why it believes videos of the Cinemark witnesses were necessary (Dkt. #212 at p. 5). Cinemark generally objects to the video depositions[3] on the basis that its witnesses were within the Court's subpoena power under Federal Rules of

---

[2] Cinemark specifically objects to the video depositions of Cinemark's witnesses Caren Bedard, Chanda Brashears, Don Harton, Lindsey Hearn, Gabriela Madrid, Art Murtha, Drew Porter, Damian Wardle, and Mark Zoradi (Dkt. #214 at pp. 11–13).
[3] Cinemark has not objected to the paper transcripts of these particular witnesses (*see* Dkt. #212, Exhibit 3 at pp. 2–6 (costs of transcripts and video depositions); Dkt. #214 at pp. 11–13 (objections to video depositions only)).

Civil Procedure 45(c)(1)(A)–(B) (Dkt. #214 at p. 10). Cinemark also notes that Factory Mutual does not "seriously dispute the credibility of any witness" and that while Factory Mutual "briefly asserts that it needed the deposition videos for impeachment purposes at trial, [] nowhere does [Factory Mutual] point to any specific witnesses whose credibility it actually challenges" (Dkt. #214 at p. 10). Factory Mutual replies that "[a]t the time the parties conducted these depositions, the parties could not have known who would be available for trial. Witnesses change jobs, move to new locations, or become unavailable for a variety of reasons" (Dkt. #216 at p. 4).

This Court has previously held that both "video deposition and transcript costs were recoverable where the record indicated that video depositions might be used for impeachment purposes." *Gibson II*, 2023 WL 2899050, at *5 (citing *Traxxas*, 2016 WL 2758183, at *20). The Court has also granted costs for both video deposition and paper transcript when witnesses were "outside the Court's subpoena power . . . because [the prevailing party] could have reasonably believed the witnesses' videotaped depositions were necessary for use in the case." *Id*. Factory Mutual has not provided the Court any evidence of either scenario.

Factory Mutual does not provide any indication that it intended to impeach witnesses using video depositions, and it only provides general speculation as to why those witnesses may have become unavailable (Dkt. #216 at p. 4 ("At the time the parties conducted these depositions, the parties could not have known who would be available for trial. Witnesses change jobs, move to new locations, or become unavailable for a variety of reasons.")). "[G]eneral speculation as to the inability of witnesses to attend trial does not suffice as a basis to award costs." *Motion Games, LLC v. Nintendo Co., Ltd.*, No. 6:12-cv-00878-RWS-JDL, 2016 WL 9136171, at *6 (E.D. Tex. Oct. 24, 2016), *report and recommendation adopted*, No. 6:12-CV-878-RWS-JDL, 2017 WL 2615436 (E.D.

13

Tex. Jan. 4, 2017). Because Factory Mutual will recover costs for the paper transcripts of these depositions and does not provide evidence for why both video and paper and necessary, the Court finds Factory Mutual cannot recover its costs for the video depositions of Cinemark's witnesses.

### 3. Other Costs Associated with Depositions

Cinemark objects to three miscellaneous costs associated with depositions: a confidential excerpt for the deposition of Mark Zoradi[4], video synch for the deposition of Jeff Casillas[5], and an undescribed fee apart from the transcript and video deposition costs for Richard Judd[6] (Dkt. #214 at pp. 10–11). Cinemark also objects to the deposition video synch costs of Thomas Veitch[7] and Mark Wakefield[8] (Dkt. #214 at pp. 12–13). Cinemark claims that "[Factory Mutual] makes no effort to explain why it needs the confidential excerpt transcript, video synch files, or the undescribed item for trial" (Dkt. #214 at p. 11). Factory Mutual does not support these costs in its motion or in its reply (*see* Dkt. #212; Dkt. #216). The Court finds that, without any demonstration why these costs were necessary to the case, the Court cannot award these costs to Factory Mutual.

### B. Exemplification Fees

Cinemark objects to Factory Mutual's requested exemplification fees. Factory Mutual requests $15,050 for converting native files into TIFF images whenever possible "[p]ursuant to the parties' electronic discovery stipulation and the resulting Electronic Discovery Order entered

---

[4] "Court Reporter – Vendor: U.S. Legal Support, Inc. – confidential excerpt for Mark Zoradi depo taken on 5/3/22" (Dkt. #212, Exhibit 3 at p. 6).
[5] "Court Reporter- Vendor: Magna Legal Services LLC – video synch for deposition of Jeff Casillas taken on 4/21/22" and "Court Reporter- Vendor: Magna Legal Services LLC – video synch for deposition of Jeff Casillas taken on 4/22/22" (Dkt. #212, Exhibit 3 at p. 3).
[6] "Court Reporter – Vendor: Stratos Veritext Legal – Deposition: Witness: Richard Judd, 2/25/22" (Dkt. #212, Exhibit 3 at p. 4).
[7] "Court Reporter – Vendor: Magna Legal Services LLC – video synch for deposition of Thomas Veitch taken on 8/10/22" (Dkt. #212, Exhibit 3 at p. 5).
[8] "Court Reporter – Vendor: Magna Legal Services LLC – video synch for depo of Mark Wakefield taken on 5/5/22" (Dkt. #212, Exhibit 3 at p. 5).

by this Court" (Dkt. #212 at p. 9) (internal citations omitted). Factory Mutual reaches this number because its vendor charged a $350 flat fee for each conversion project, and the vendor performed forty-three conversion projects (*see* Dkt. #212 at p. 9). Factory Mutual also requests $250 for "scann[ing] native paper files requested by Cinemark to produce in electronic format" (Dkt. #212 at p. 9). Cinemark believes Factory Mutual's invoices for exemplification are vague because the invoices "merely state[] 'Production Exports' with no additional explanation of what work was done," therefore making it "impossible to determine whether these costs are ones that can properly be awarded, or whether they are the sort of e-discovery costs that parties are expected to bear themselves" (Dkt. #214 at pp. 13–14).

The Court finds Factory Mutual is entitled to its requested exemplification fees. When a party incurs costs for converting native files to TIFF format pursuant to an E-Discovery or ESI order, those costs are recoverable under 28 U.S.C. § 1920(4). *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:14-cv-371, 2017 WL 4038886, at *3 (E.D. Tex. Sept. 13, 2017) ("[C]osts related to converting documents to TIFF format, as required by an E-Discovery Order, are recoverable because the documents were 'necessarily obtained for use in the case.'"); *Automation Middleware Sols., Inc. v. Invensys Sys., Inc.*, No. 2:15-cv-00898-RWS, 2018 WL 11229935, at *5 (E.D. Tex. Mar. 19, 2018) ("[C]osts related to converting documents to TIFF formation, as required by the ESI Order, are recoverable because the documents are 'necessarily obtained for use in the case.'"); *Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-00201-LED-JDL, 2014 WL 11511734, at *3 (E.D. Tex. Oct. 10, 2014) ("Parties that agree to such an arrangement shall have agreed that the costs of converting native documents to TIFF are taxable under Rule 54."). Factory Mutual explained the requested costs were associated with TIFF

conversion both in its Motion and in the Affidavit of James V. Chin in Support of Bill of Costs (Dkt. #212, Exhibit 1 ¶ 9 (stating costs were "[f]or scanning and converting native paper files to digital images in accordance with the party's agreement and the Court's Electronic Discovery order" and "[f]or converting native digital files to image files (also in accordance with the party's agreement and the Court's Electronic Discovery Order)")). The Court does not find Factory Mutual's explanation so vague that it cannot award costs. Between the Motion, affidavit, and receipts, "[t]he Court is inclined to accept counsel's representation of the true nature of these document production tasks as made in good faith." *Motion Games, LLC*, 2016 WL 9136171, at *6. Accordingly, the Court will award Factory Mutual's requested exemplification fees.

### C.    Printing Fees

Cinemark objects to certain printing fees incurred by Factory Mutual. In particular, Cinemark objects to Factory Mutual's requested fees of $124.23 for "costs paid to a vendor for printing the exhibits for the deposition of Dr. David Goldsmith, comprising of 852 black and white pages" (Dkt. #212 at p. 8). Cinemark objects because Factory Mutual's "use of a third-party vendor for copying costs in the same location that counsel maintains an office is excessive and not necessary" (Dkt. #214 at p. 14). Factory Mutual argues it is entitled to the printing costs despite using a vendor because "[h]ad [Factory Mutual's] counsel, instead of the vendor, printed the documents and charged [Factory Mutual] for the printing, [Factory Mutual] would still have been entitled to these costs" (Dkt. #216 at p. 6). Cinemark responds that while Factory Mutual "asserts that it could have printed the documents at its own counsel's office and still charged Cinemark[,] . . . it did not do so for other documents printed at counsel's office. And it offers no support as to what that cost would be and if it is comparable" (Dkt. #218 at p. 7).

The Court finds that Factory Mutual may recover its $124.23 printing costs. Factory Mutual has no affirmative obligation to use its counsel's printing services whenever possible. Parties can use a mix of both its counsel's printing services and vendor's printing services. *See Kroy IP*, 2015 WL 4776501, at *6 (summarizing both counsel's and outside vendors' copying costs). And as "a number of courts, including this District, have indicated that 15¢ per page is now an acceptable rate for an award of copying costs," the Court finds no need for Factory Mutual to submit a cost analysis of the vendor printing costs to its counsel's printing costs since the ultimate cost per page is approximately 14.5¢. *Richards v. Lufkin Indus. LLC*, No. 9:14-CV-00136-RC, 2019 WL 6682079, at *6 (E.D. Tex. Mar. 26, 2019).

## IV.  Summary of Awarded Costs

The Court summarizes below the costs requested by Factory Mutual and the costs the Court grants.

| Type of Cost | Factory Mutual Requested Amount | Amount Granted |
|---|---|---|
| Clerk Fees | $408.68 (Dkt. #212, Exhibit 3 at p. 2) | $408.68 |
| Deposition Transcripts of Factory Mutual's Own Witnesses | $33,005.86 (*see* Dkt. #212, Exhibit 3 at pp. 2–6) | $33,005.86 |
| Video Depositions of Factory Mutual's Witnesses, including expert witness Gene Del Vecchio | $4,670.50 (*see* Dkt. #212, Exhibit 3 at pp. 2–6) | $4,395.50 |
| Video Depositions of Cinemark's Witnesses | $35,189.00 (*see* Dkt. #212, Exhibit 3 at pp. 2–6) | $0.00 |
| Miscellaneous Costs Arising from Depositions | $3,556.55 (*see* Dkt. #212, Exhibit 3 at pp. 2–6) | $0.00 |
| Other Deposition Costs with No Objections from Cinemark | $105,893.22 (*see* Dkt. #212, Exhibit 3 at pp. 2–6) | $105,893.22 |
| Exemplification Fees | $15,300.00 (Dkt. #212, Exhibit 3 at pp. 7–9) | $15,300.00 |
| Printing Fees | $124.23 (Dkt. #212, Exhibit 3 at p. 6) | $124.23 |
| Witness Fees | $40.00 (Dkt. #212, Exhibit 3 at p. 7) | $40.00 |
| *Total* | $198,188.04 | $159,167.49 |

## CONCLUSION

It is therefore **ORDERED** that Defendant Factory Mutual Insurance Company's Motion for Costs (Dkt. #212) is hereby **GRANTED in part.**

It is further **ORDERED** that Factory Mutual Insurance Company be awarded costs in the amount of $159,167.49.

**IT IS SO ORDERED.**

 **SIGNED this 6th day of March, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE